MARIA E. COCHRAN et al., Appellants, v. W. F. MAIN et al., Appellees.

**MORTGAGES:** Validity—Fraud—Evidence—Sufficiency. Evidence
1 reviewed, and held insufficient to show that a mortgage had been obtained by fraud.

**DEEDS:** Validity—Fraud—Failure to Read. One who knows that
" the instrument he is signing is a deed may not predicate fraud or invalidity on the plea that he signed the instrument without reading it.

**MORTGAGES:** Foreclosure—Prayer for Alternative Relief. A
3 prayer that plaintiff's title be quieted absolutely, with prayer for foreclosure as alternative relief, entitles the pleader to foreclosure when it is found that he is not entitled to the former relief but is entitled to the latter.

**FRAUD:** Evidence—Admissibility. 'Fraud perpetrated by a hus-
4 band upon his wife in inducing her to execute a mortgage is not

admissible against the mortgagee unless such mortgagee is con-
nected therewith.

HOMESTEAD:    Transfer or Conveyance—Joinder of Husband and
Wife.    Where both husband and wife joined in the execution
of an absolute deed to a homestead, it is immaterial to the valid-
ity of such transaction that the wife was not a party to a sub-
sequent arrangement between the grantee and the husband by
which, under specified conditions, the husband was to receive
a· reconveyance.

*Appeal from Johnson District Court.*—R. P. HOWELL,
Judge.

MAY 14, 1917.

REHEARING DENIED NOVEMBER 26, 1917.

CONSOLIDATED suits.    The inquiry on appeal resolves it-
self into whether it was error to deny the alternative prayer
of appellants that a deed and contract to reconvey given to
appellant be foreclosed as a mortgage.—*Reversed.*

*Grimm & Trewin,* for appellants.

*Ranck & Messer, A. E. Maine* and *C. H. Van Law,* for
appellees.

SALINGER, J.—I. W. F. Main answers,
separately, that the relations between him
and Cochran were confidential, in the sense
that Cochran knew that business reverses
and conditions obligated Main to borrow; that, when Main,
according to custom, conferred with Cochran as to how to
obtain a loan of $6,000, Cochran suggested a mortgage to
him upon the Main homestead, known by Cochran to be
worth from $12,000 to $15,000.    Finally, Cochran pointed
out that he was loaning at low interest, and if an ordinary
mortgage were given, it would be taxed, and that, to avoid
this, Main and his wife should make a deed, and there
should be made a contemporaneous writing, in the nature of

1. MORTGAGES:
   validity:
   fraud: evi-
   dence: suffi-
   ciency.

a defeasance or agreement to reconvey upon payment of the loan. Main acquiesced. Cochran agreed to prepare, and there were prepared, papers to effectuate this arrangement in such way as that the papers would amount to a mortgage. Main, his wife and Cochran met in the office of Milton Remley on November 7, 1908, to carry out this plan. Main concedes that there a deed and contract were produced that were the equal of a mortgage. He and his wife signed the deed, but the wife did so without having same read or reading it. Immediately after signing, Mrs. Main was told that she had signed a deed, but, as soon as the proposed contract of defeasance was read to her, she refused either to convey or encumber her homestead rights. Main was under belief that the arrangement was therefore abandoned, and the deed and proposed contract destroyed. But he was and remained "in dire and absolute need" of the $6,000. Finally, on January 11, 1909, he obtained the loan and secured it by signing a contract in substance like the one his wife had refused to sign, and delivering to Cochran the deed which Main had supposed was destroyed.

II. The answer builds a claim of fraud, in effect this: Cochran and Main knew that Main's wife believed that the deed was destroyed and the loan abandoned. They knew that no lien upon the homestead could be effected unless Mrs. Main acquiesced in a delivery of the deed by her husband; Cochran and Main knew that she was not acquiescing, because she did not know there was anything to acquiesce in; and Cochran induced the husband to keep her in ignorance. Both Cochran and Main believed that what Main was asked to do constituted at most no more than an equitable mortgage, and in truth it could amount to no more. Cochran induced Main to give such equitable mortgage. The vitals are that Cochran, by false and fraudulent representations, which were true and which Main

knew to be true, induced Main to take $6,000 of Cochran, and in return to give a security which Cochran knew was worthless, with purpose to deprive the Mains of their homestead by means of what Cochran knew could not affect any right to or in the homestead, and that, because Cochran sought to enforce the contract against the homestead, Main is relieved from repaying what Cochran loaned him.

We are relieved from passing upon whether this rather unusual defense would avail if sustained by the evidence, because the vitals of such defense are not proved. If there be anything that even tends to show that Cochran made any representations or was guilty of any fraudulent conduct, it consists of: (1) Testimony aptly objected to, which was incompetent because Cochran was dead when same was offered; (2) testimony of Main that he asked Remley whether delivering deed when both Cochran and Main knew that Mrs. Main refused to deal would be effective and get Main into trouble, and Main was assured that neither was so, relying upon which Main claims that he delivered the deed and made contract—and this is improbable and denied, and is not binding upon Cochran; (3) a statement by one Maize that Remley told him, later, that a deed delivered in the circumstances such as the Mains assert would not, in law, be delivered at all, which is a statement fully denied, and is also not binding on the Cochrans; (4) alleged confidential relations, consisting of paying J. C. Cochran something like $25 or $35 a month for services enabling Main to obtain loans, and of Cochran's having knowledge of W. F. Main's business affairs, with a view to knowing what loans were justified.

It may be added in passing that, when later W. F. Main filed his schedule in bankruptcy, he listed the claim of Cochran as being a promissory note secured by mortgage on the premises occupied by the Mains as a homestead.

The briefs on what constitutes actionable, false and fraudulent representations are sound, but neither they nor pleading is a substitute for evidence on whether any such representations were or were not made. In this condition of the record, we are unable to formulate any theory upon which the action of the trial court denying all relief against W. F. Main can be supported.

III. As to the case of Janet L. Main:

There is no occasion to refer to the voluminous pleadings on her part beyond saying that there is sufficient pleading to give her the benefit of whatever proof she has, and pointing out some admissions they contain.

2. DEEDS: validity: fraud: failure to read.

In substance, her claim is that she signed a deed to her homestead without knowing its contents, believing it was a mortgage. No serious claim is or can be made that a fraud was thus worked upon her, because she concedes that, immediately after signing, she was informed that she had signed a deed, and asked to join in a contract which would restore the property conveyed by the deed upon repayment of a loan to be made her husband.

In the circumstances disclosed by this record, Mrs. Main gains nothing from the fact, if it be one, that she signed the deed without reading it or having it read. *Chirurg v. Ames,* 138 Iowa 697; *Kimball v. Eaton,* 8 N. H. 391; 13 Cyc. 737. This leaves her nothing except a complaint that there was this "fraud." Upon being thus advised, she refused to do anything that would either encumber or convey her homestead rights; that thereupon the negotiations were abandoned; that she then was under the belief that the deed and the proposed contract had been or were to be destroyed; that the deed was not destroyed; and that thereafter her husband, without her knowledge or consent, entered into a contract wth Cochran different from the one which she had refused to sign,

and in connection delivered to Cochran the deed which she supposed had been destroyed; that thereupon the said loan was made, and Cochran and her husband placed said deed of record, thus creating a cloud upon her title or rights. Both husband and wife testify in support of this claim.

In this transaction claimed to have been abandoned, Mr. Milton Remley took an active part, and he positively denies the essentials of the claim made by the Mains. In effect, he says that the deed was read over to Mrs. Main. All agree that the proposed contract of defeasance or for restoration was. Mr. Remley says that this phase of the transaction was canvassed for more than an hour; that he suggested that it was an unwise thing to encumber a homestead if there was any other course left open; the up-shot was that all parties agreed that the husband would make an effort to obtain the loan he desired of someone other than Cochran, by some method other than encumbering the homestead. The deed was left with Remley against the contingency that Main might be unsuccessful, and the deal was then postponed temporarily, but indefinitely as to time; that, before Mrs. Main left, he requested a distinct direction, and she agreed that the deed should be left with him, and that, when Cochran signed an agreement in substance that they could have reconveyance, the deed was to be delivered to Cochran, upon his paying $6,000. When Main found that he could not get the loan elsewhere, a new contract was drawn, which was made up from the notes of the one that had been proposed at the meeting, the last being in substance like the one proposed. The deed was turned over to Main or Cochran, or both. It is conceded that thereafter the husband delivered the deed to Cochran and entered into the said new contract, which is the one that Cochran seeks to enforce.

Mr. Remley says positively that there never was re-

fusal to encumber the homestead. The testimony of one Maize does no more on this head than to corroborate the claim of refusal by an alleged admission of Cochran's that there had been a refusal. But the alleged admission is qualified, in that it stated also that the refusal came after Mrs. Main was advised of the option to buy back, and told that it was not a good thing to deed the home place. There is testimony that Cochran felt very much upset because of loss occasioned by this alleged refusal. But it appears without dispute that he arranged with a bank to furnish funds to Main without interest charged to Cochran until he actually took the money.

The plaintiffs have some corroboration in admissions claimed to have been made by the Mains, to the effect that the wife fully realized, at a time when she claims not to have authorized it or known it, that a loan had been made to her husband and security therefor given upon the homestead. But admissions such as here asserted by both sides are not strong evidence, and the Mains deny making these last.

Which version is to be sustained? While, in effect, it is the claim and testimony of Mrs. Main that she was deceived into executing a deed when she had been led to believe it was a mortgage, an analysis of it shows that what she really complains of is having been led to believe that she was signing the usual form by which a mortgage is created, when in fact she was deceived into signing a mortgage created by a deed to be supplemented by an agreement to reconvey upon payment of a loan; that it was a fraud to induce her to sign a mortgage unless it was one written upon an ordinary mortgage blank,—and, as seen, she was told she had signed a deed.

Many things aid in settling who has the better evidence. The testimony of Remley comes from one who has no direct or substantial interest, and is full, clear and

frank. The Mains are vitally interested, and both are quite evasive, where they are not overready. It took much pressure to have the husband admit that he got the $6,000 and to have Mrs. Main say that she consented to join in a mortgage because her husband was in dire need of the $6,000. Both testify that, before they went to Remley's office, nothing had been said or done to arrange for a loan or giving security for one; but it appears, by their own sworn pleadings and their own other testimony, that there was a prearrangement, and that husband and wife went to the office of Mr. Remley to give a mortgage upon the homestead as security for a $6,000 loan. On their testimony, when they reached Remley's office to make the mortgage, the papers by which it was proposed to make it were, by some miracle, already prepared for signature. Starting with the premise that both knew that the husband *must* have the money, Cochran was willing to lend, and it could not be got except upon mortgage to Cochran, and that both had agreed and were present to mortgage the homestead to secure the loan, how can it reasonably be found that Mrs. Main, after being truthfully told that a deed and a proposed contract would make that mortgage, refused to make deed *or mortgage?* Her husband, who attempts to support her claim, admits, in his sworn pleadings, that the mutual purpose was to have the deed and the contract constitute a mortgage. The record overwhelmingly demonstrates that Cochran considered himself a mortgagee only. The proposed contract and the one finally entered into by the husband gave the Mains possession, and shows on its face that it makes the deed operate as a mortgage. Mrs. Main describes the one she refused to sign as one giving privilege to get back the house by paying $6,000 within a stated time. When the deed was offered on the trial, one objection was that the pleadings disclose that an instrument was to be executed in conjunction therewith which Mrs. Main

had refused to sign. In her cross-petition, she declares that the paper she refused to sign was part of the transaction of signing the deed. Her husband says, in a pleading which he verifies, that a deed to the homestead was produced and a contract purporting to show the necessary terms and conditions to make the deed into a security for said loan, and that Cochran *falsely* represented to him the nature of the deed by stating that it was equivalent to a mortgage and would be treated as such, and was only for the purpose of protecting Cochran. It is beyond question that Cochran regarded the making of the deed and a contract like the one proposed as a mortgage. Maize says that Cochran said he thought as much of Main's family as of his own, and would not take their home, and that they had an option to pay back. A memorandum found in his papers and a letter he wrote Main demonstrate that this was his attitude. So does an answer he filed. While the contrary is urged for it, the very suit he brought proves he did not claim title by deed. While he prayed that this title be quieted, it was not on the ground that he had a deed, but because his contract, which provided for a forfeiture on nonpayment, had been breached. On this appeal, appellants assign as error that the court would not hold that the deed and contract were in effect a mortgage.

We are unable to reach any conclusion save that it was agreed by all that the matter in hand should be kept in abeyance pending an attempt by Main to borrow elsewhere, and upon the failure of that, the husband could deliver the deed and make the contract he did make. We are abidingly persuaded that the evidence fully sustains the claim of the appellants that, at worst, they were entitled to be dealt with as mortgagees.

We have no occasion to say whether, even if there were no conflict, the alleged refusal would have made the subsequent dealing ineffective as a mortgage upon the home-

stead. Where, as here, there is plea and proof that plaintiff had the rights of a mortgagee, and a prayer for general relief, rights as mortgagees may be enforced though the general prayer asked that full title be given because of said breach of contract. *Hoskins v. Rowe,* 61 Iowa 180, at 182; *Pond v. Waterloo Agric. Works,* 50 Iowa 596; *Thomas v. Farley Mfg. Co.,* 76 Iowa 735; *Reiger v. Turley,* 151 Iowa 491. But this need not control, because appellants expressly prayed foreclosure as alternative relief.

3. MORTGAGES: foreclosure: prayer for alternative relief.

Owing to the manner in which we dispose of the case, it is quite immaterial, if true, that Cochran told Maize that he would not want Mrs. Main advised of what he and Main had done, explaining that the deal was a personal one between him and Main—a statement that Cochran admitted that he had taken a worthless security.

The proposed contract and the one finally entered into were not substantially different. But what we have said makes plain that it is not material if they were. ·Fraudulent representations, if any, to the wife, made by her husband, do not affect Cochran. *Warthen v. Himstreet,* 112 Iowa 605, at 607.

4. FRAUD: evidence: admissibility.

We have given the fact that the trial court saw and heard the witnesses all the effect it is entitled to on this review, but, notwithstanding, find that the appellants have a mortgage. That being so, it is no argument, if true, that the property is worth from $16,000 to $17,000. The appellees can retain this property, no matter what ·its value, by paying the mortgage debt.

We are furnished able and exhaustive citation of authority upon whether Cochran may have relief against so much of the premises as exceeds one-half acre, and for

5. HOMESTEAD: transfer or conveyance: joinder of husband and wife.

the undeniable proposition that the homestead can be encumbered only upon written instrument signed by both husband and wife, and that signing by one spouse and verbal authority to mortgage given by the other is ineffective. They are irrelevant. They would be applicable if an alienation of the homestead, rather than an agreement to restore it, were involved. The *alienation* was jointly signed. Whatever was verbally done or authorized relates to avoiding what was so signed.

The elaborate briefs on what does and does not constitute an effective delivery have furnished little, if any, help to determining whether there was a delivery in this case.

In view of the disposition made of the appeal, it is unnecessary to consider the claim of title by adverse possession made by the appellees.

The decree of the district court is reversed, with direction to enter decree of foreclosure as prayed.—*Reversed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.