JOSEPH B. WAGNER et ux., appellees, v. HARRY WAGNER et al., trustees-appellants.

No. 47740.

(Reported in 45 N.W.2d 508)

JANUARY 9, 1951.

REHEARING DENIED MARCH 9, 1951.

Parrish, Guthrie, Colflesh & O'Brien, of Des Moines, for appellants.

Earl Gritton and Hextell, Mitchell & Beving, all of Des Moines, for appellees.

HAYS, J.—This equitable action, asking for the cancellation of a certain deed and trust agreement covering the real estate in question, is based upon two propositions: (1) Fraud and (2)

violation of section 10147, Code of 1935 (section 561.13, Code of 1946). The trial court found fraud and canceled the instruments. Defendants have appealed.

Appellees in their brief and argument state: "The instant case, however, does not involve a charge of actual fraud or collusion, but involves a case of constructive fraud arising out of a confidential and fiduciary relationship." It is conceded that as between Joseph B. Wagner and E. C. Newell the relationship of attorney and client exists; also, that as between Joseph B. Wagner and Harry and LeRoy Wagner there exists the relationship of parent and children.

In Merritt v. Easterly, 226 Iowa 514, 284 N.W. 397, the distinction between a fiduciary and a confidential relationship is discussed. It is there said that a person in a fiduciary relation to another is under a duty to act for the benefit of the other as to matters within the scope of the relationship and includes the relation of attorney and client. A confidential relationship, although including a fiduciary relation, may exist although it is not fiduciary, and does exist when one has gained the confidence of another and purports to act or advise with the other's interest in mind. It is often found where a family relationship exists.

. In the instant case, a fiduciary relationship between Joseph B. Wagner and E. C. Newell being admitted, the question is whether or not there has been a betrayal of that relationship. As to Joseph B. Wagner and Harry and LeRoy Wagner, it is admitted that Joseph B. Wagner is their father, but this relationship alone does not create a confidential relationship in the sense here used. Two questions arise: (1) Is their relationship with their father confidential—did the father repose faith and confidence in them—were they thereby in a position of dominance while the father was in a position of subservience? (2) If so, Was that confidence betrayed?

This being an equity action it is triable de novo here, and while the finding of the trial court is entitled to great weight it is not conclusive on this court. The above is elementary and needs no citation of authority.

Joseph B. Wagner at the time of the trial, 1950, was ninety-one years of age and totally blind. His wife, Ida Wagner, was seventy-seven years of age. These facts may be noteworthy as

bearing upon their credibility as witnesses but have little force in determining the questions presented by this appeal. The deed and trust agreement in question were executed in 1936 and it is as of that date that we are chiefly concerned. It is claimed that Joseph B. Wagner, in 1936, had lost his sight to the extent that he could not read and had to rely upon others to read or explain various papers to him. The record, while showing a defective eyesight, does not warrant such a conclusion. It was not until in 1937 that he was denied a license to drive a car, and thereafter, in an action to force the issuance of such a license, stated and demonstrated that he could read.

Joseph B. Wagner and Ida Wagner, his wife by a second marriage, have resided on the land in question for more than fifty years. Harry and LeRoy Wagner, his children by a former marriage, maintain their own homes in the same community. On January 25, 1936, Joseph B. Wagner, accompanied by his two sons, Harry and LeRoy, went to the office of E. C. Newell, a practicing attorney at law in Des Moines, where the deed and trust agreement were signed by him. The deed was then taken by him to his home where his wife signed the same and it was returned to Newell and by him placed on record.

The deed conveyed a fee to Harry Wagner in the real estate in question, subject to an estate for the life of Joseph B. Wagner, and was signed by both Joseph B. and Ida Wagner.

The trust agreement stated, in part:

"This agreement made and entered into whereby: Joseph B. Wagner having with the execution of this instrument likewise deeded to Harry Wagner his farm * * * and reserving for himself a lifetime estate only in said property, and Now THEREFORE, and by this instrument said Harry Wagner becomes and is a trustee with E. C. Newell * * * after the demise of the said Joseph B. Wagner * * * said Harry Wagner to either sell said farm immediately or to lease, the said trustees to be the sole judge of the propriety of either selling immediately or the leasing at the greatest benefit to the trust and holding said farm to sell at an advantageous price, and that said trustees shall apply said money so obtained to the use of the trust and shall distribute and pay out the same as hereinafter directed * * *. One third of the net cash to the widow of Joseph B.

Wagner, one third to the said Harry Wagner and the remaining one third to be paid from time to time by said trustees to the use of LeRoy Wagner and his two sons Raymond and Gerald Wagner * * *. Under no circumstances are said trustees to apply to any account or claim of Mary Wagner, former wife of LeRoy Wagner, any part of said money."

The instrument also assigned and transferred all of his personal property, including crops to be grown in the future, to the trustees with title to vest immediately. The trustees were to pay the taxes, etc., and from the balance to pay to Joseph B. Wagner sufficient to maintain Wagner and his wife in their present status of living during his lifetime; also provided for his funeral expenses, not to exceed $250, the balance to go into the trust fund and be distributed as above set forth.

Joseph Wagner and his wife have continued to live on the farm and he has managed it exactly as he did before the papers were executed. The trustees have never acted. They say that it was agreed when the papers were signed that only on the death of Joseph B. Wagner or in the event of his "blowing up" were they to act. Appellees contend that the papers were intended only as a disposition of the property on the death of Wagner and were not to have immediate effect; that they relied upon the appellants to advise them as to the contents of the papers and were deceived by them.

Have the appellees established fraud upon the part of Harry and LeRoy Wagner? As before stated, only constructive fraud is charged and hence there must first be established a confidential relationship between them and Joseph B. Wagner.

Without going into unnecessary detail, the record shows that Joseph B. Wagner was a rough, tough individual. He had a driving personality, frequently at odds with his neighbors and business associates as well as with members of his own family. He neither sought nor heeded advice. On direct examination he stated that he depended "on Mr. Eide [his tenant] he is honest." Also:

"Q. Since you haven't been able to read have you depended on Harry and LeRoy, your sons, the same way you have been depending on Louie Eide? A. No, I don't have nothing to do

with them guys. Q. You are talking about the present time? A. Yes, I ain't had nothing to do with them since 1934. Q. That is, neither of your sons or Mr. Newell has had anything to do with renting this farm since 1934, is that what you mean? A. Yes. And they had nothing to do with it before, as far as that is concerned. I always done the renting myself." On cross-examination he testified: "Q. You have always run your own business? A. I have, and I am running it yet. Q. Have you ever had Harry transact business for you? A. Not that I remember of."

Harry Wagner testified: "Q. Had you transacted any business for your father up to the time these trust agreements were signed? A. I never had transacted any business for him. Q. Did he ever call on you to read instruments for him or advise him in regard to any instruments he was thinking of signing? A. No, sir."

It is claimed by appellees that Harry and LeRoy Wagner went with Joseph B. Wagner to the Newell office at his request and for the purpose of advising him. The record shows that they went with him, but it does not show that they were at all familiar with the purpose of the visit or that they took any part in the conversation there. In fact it clearly appears that Joseph B. Wagner and E. C. Newell did the talking; that the papers were read over and discussed at length by them. Under this record we do not find the relationship of a confidential nature such as to place a duty upon the two sons. There is no showing of fraud, constructive or otherwise. The appellees cite many authorities where instruments between parents and children have been set aside as fraudulent, but they are readily distinguishable on the facts.

Has fraud been established on the part of E. C. Newell? Under the record it appears that Wagner and Newell had discussed this matter on previous occasions and the papers were prepared when Wagner called on January 25. Newell had represented Wagner in other legal matters and was familiar with his hatred of Mary Wagner, LeRoy's former wife. He knew of Wagner's radical and troublesome proclivities and his constant exposure to litigation on account thereof. We are satisfied that E. C. Newell prepared the papers as he was instructed to do;

that they were fully explained to Wagner and discussed between them at the time they were signed and that Newell was not remiss in his duty to his client. No fraud has been established.

■ Appellees (plaintiffs below) asserted in the trial court that the "deed" and the "trust agreement" constituted two separate instruments both involving the homestead; that the failure of the wife, Ida Wagner, to sign the "trust agreement" voids the entire transaction in so far as the homestead is concerned as being in violation of section 10147, Code of 1935 (section 561.13, Code of 1946). The trial court found fraud and set aside the entire transaction on account thereof. It did not determine the homestead issue. Appellees submit the question here as a basis for affirming the decree of the trial court.

Section 10147 provides, in part: "No conveyance or encumbrance of, or contract to convey or encumber the homestead, if the owner is married, is valid, unless the husband and wife join in the execution of the same joint instrument." Appellants concede the existence of the homestead and that the deed and trust agreement are part of the same transaction but deny that they are the "same instrument." They assert that by the execution of the deed the homestead was effectively conveyed within the terms of section 10147; that the homestead, being conveyed except as to the reserved life estate, was terminated, and the trust agreement cannot affect that which does not exist; that section 10147 does not apply.

■ While we recognize the importance of section 10147 in the protection of the homestead status, we are inclined to accept appellants' theory as sound. The deed conveyed the fee, subject to the life estate of Joseph B. Wagner, to Harry Wagner. Ida Wagner was named as a grantor therein and signed the same with her husband, Joseph B. Wagner, as the statute required. Assuming that she signed the same without knowing its contents, as claimed by appellees, it appears without dispute that she did so without making any effort to ascertain its nature, and the conveyance is valid. First Nat. Bk. v. Ten Napel, 198 Iowa 816, 200 N.W. 405. The trust agreement includes the entire tract of real estate but takes nothing from the wife that she would have but for the same. In fact, the trust agreement tends to restore rather than take away.

Cochran v. Main, 181 Iowa 906, 916, 162 N.W. 561, 564, involves a somewhat similar situation. The husband and wife executed a deed to the homestead. She was then given another instrument to sign, which, in effect, made the deed a mortgage. This latter agreement she refused to sign and the deed was not delivered. Later, the husband delivered the deed and signed the second agreement, which the wife had refused to sign. In an action to foreclose the deed one defense urged was that it involved the homestead and was void since she had not joined in the execution of the second agreement, as required by section 10147. This defense was rejected as irrelevant, the court saying it "would be applicable if an alienation of the homestead, rather than an agreement to restore it, were involved. The alienation was jointly signed. Whatever was verbally done or authorized relates to avoiding what was so signed." This is, in effect, the situation in the instant case. We hold section 10147 is not applicable. Appellees cite Wright v. Flatterich, 225 Iowa 750, 281 N.W. 221. That case holds that an oral agreement to terminate a leasehold interest, which included a homestead, was void under section 10147 and is not in point.

For the reasons above stated the decree of the trial court must be and is reversed.—Reversed.

WENNERSTRUM, C. J., and BLISS, OLIVER, GARFIELD, and MULRONEY, JJ., concur.

SMITH, J., specially concurs.

MANTZ, J., not sitting.

SMITH, J. (specially concurring)—I concur in the majority opinion but think something further should be said.

While the deed and the trust agreement were parts of the same transaction, the latter only served the purpose of a declaration of trust by grantee who by virtue of the deed became holder of the legal title. It did not convey or encumber or "contract to convey or encumber" the homestead. It was no part of the conveyance but served only to limit or qualify the conveyance.

It complied with our statute of frauds (sections 557.10 and 622.32, I. C. A.) in that it was "signed by the party charged,"

488

to wit, the owner of the legal title. There is no requirement that a declaration of trust be signed by anyone else.

. The rule as to the creation of trusts where a writing is required is that "the writing be subscribed or signed by the party who settles *or declares the trust,* who conveys in trust, *or who admits the trust against his legal title.* * * * the subscribing may be by the trustee, where the trust is created *by his declaration when he takes or while he holds legal title".* (Italics supplied.) 54 Am. Jur., Trusts, sections 46, 61; 65 C. J., Trusts, 264, section 46, note 86, section 62, page 280, note 86.

Joseph B. Wagner's signature to the trust agreement was unnecessary as by the concurrently executed deed both he and his wife, Ida, conveyed the land including the homestead. By the same token the wife's signature was unnecessary to the creation of the trust. Restatement of the Law, Trusts, section 42(b), and Comment f, page 131.

I am authorized to say that JUSTICES OLIVER, MULRONEY, GARFIELD, and BLISS, and CHIEF JUSTICE WENNERSTRUM join in this special concurrence.