IN RE ESTATE OF ARTHUR H. HEWITT.

EDWARD HEWITT et al., appellants, v. OPAL E. HEWITT, individually and as administratrix, appellee.

No. 48332.

(Reported in 62 N.W.2d 198)

JANUARY 12, 1954.

Bradshaw & Crawford, of Fort Dodge, for appellants.

William L. Peters and Austin B. Hogan, both of Fort Dodge, for appellee.

HAYS, J.—Arthur Hewitt died intestate in 1949 seized of 72½ acres of land, known as Tract I, and an acreage, Tract II. Both are located in Webster County, Iowa. He also was possessed of some personal property. He was survived by his widow, Opal Hewitt, and two brothers, Edward and George Hewitt. Predeceasing him were his father, William Hewitt, in 1938, his mother, Elizabeth Hewitt, in 1939, and an unmarried sister, Lillian Hewitt, in 1941. Each was at the time of death and for many years prior thereto residing in decedent's home. Edward left the family home in 1903, George in 1914.

Edward and George Hewitt, plaintiffs, filed claim in probate and also commenced a partition action as to Tract I, claiming to own an undivided interest therein and to the personal property. The claim is based upon two theories: (1) A partnership in which they were partners and (2) as heirs at law of William Hewitt, deceased, with Arthur Hewitt holding title to the tract as a trustee for the heirs. They were consolidated for trial, a judgment for the defendant, and plaintiffs appeal.

The record is replete with testimony clearly incompetent under section 622.4, Code, 1950, and shows little effort by counsel to comply with rule 340, R.C.P. In 1920 William and Arthur

Hewitt took title to 57½ acres of land by deed from one Hart. In 1924 they took title to an adjoining 15 acres by deed from the heirs of Baker, deceased. The two tracts comprise Tract I. In 1938 William and Elizabeth Hewitt quitclaimed their interest therein to Arthur, who has had exclusive control thereof since said date.

██ ██  I. Plaintiffs claim an interest based upon a partnership in which they were partners with William and Arthur Hewitt. In 1911 William and Arthur bought, on contract, some land known as the Watson farm. Little appears to have been paid thereon. In 1915 this contract was assigned for $3264 and an equity in Minnesota land, known as the Flatbush farm. In 1920 this equity and $2000 was given to Hart for the 57½ acres. Arthur handled all transactions and paid the money to Hart. Whose money it was does not appear.

The claim is that the Watson farm was bought as a family partnership venture primarily for mining coal thereunder. A mine was opened and some coal sold but the amount thereof is not set forth. It is claimed that each member of the partnership received only a sustenance wage, with the balance of the proceeds being used to buy the farm. The amount of the wages and the balance, if any, does not appear. A fair inference is that the mining operations were a failure. The contention is that the Watson farm was transferred to the Flatbush farm and thence to the 57½ acres and their interest carried through. No written agreement is claimed. Edward testifies to a conversation he had with William and Arthur, at the time the farm was bought, which does not even tend to show an implied contract even assuming such testimony competent under section 622.4, Code, 1950. No such claim was ever made until after the death of Arthur, who took title to at least a part of the tract in 1920 and to all of it in 1938.

The law is settled that a partnership cannot exist except through an express or implied contract in which the profit and loss are to be shared. Citizens Bank v. C. F. Scott & Son, 217 Iowa 584, 250 N.W. 626; Myers v. Blinks, 232 Iowa 1238, 7 N.W.2d 819. The trial court held there was a total failure by plaintiffs to show the alleged contract and we agree.

██ ██ II. Plaintiffs also claim an interest on the theory of a constructive trust; that William and Arthur were partners in the Watson farm and thence into the 57½ acres; that at the time the deed was made by William to Arthur a confidential relationship existed in which Arthur was the dominant party; that there was no valid consideration for the same and that the law presumes a fraud on William. Assume that a partnership existed between William and Arthur, the only evidence thereof being the fact that the deeds were to William and Arthur, mere partnership and a conveyance by one partner to another of partnership assets does not make a presumptive fraud or establish a confidential relationship. There was a parent-and-child relationship, the father was eighty-five years of age at the time of the deed, he was, and had been for years, a resident of Arthur's household and continued to be until his death. His health was normal for his age. There is no showing that either dominated or advised the other on business matters. There is no showing that the consideration for the deed was inadequate or that William ever paid any of the purchase price for the farms, in fact no showing that he ever had means out of which he could have made payments.

The elements necessary to show a constructive fraud are set forth in our cases together with the rule that in order to establish such, the evidence must be clear, satisfactory and convincing. Pruitt v. Gause, 193 Iowa 1354, 188 N.W. 798; Wagner v. Wagner, 242 Iowa 480, 45 N.W.2d 508; England v. England, 243 Iowa 274, 51 N.W.2d 437. This record falls far short of meeting the basic requirements.

██ III. Plaintiffs also ask for an accounting for $1003.85 alleged to have been paid to Arthur for the benefit of the William Hewitt heirs. In 1907 William, Edward and Arthur Hewitt bought, on contract, a farm in Alberta, Canada. By 1910, $3000 had been paid on the purchase price thereof. Being unable to make further payments, various adjustments were made and finally a quarter section of land was taken in settlement by the Hewitts. This was sold in 1933 on contract for $3500. In 1933 this was adjusted by the Hewitts taking a mortgage for $1800, to be paid by installments. This was finally paid off in

1946. Out of this transaction Edward kept $1003.85 and paid a like amount to Arthur, as he says, for the benefit of the William Hewitt estate. The only heirs were Edward, Arthur and George Hewitt. The record is confusing, the claim incredible and sought to be established solely by the testimony of Edward Hewitt as to his dealings and conversations with Arthur. The trial court held the claim to be without merit and correctly so.

IV. As to Tract II: George Hewitt is now residing thereon and has done so since 1943, paying a monthly rental therefor until Arthur's death. Arthur took title to this acreage in 1928. In 1936 George moved on the 57½ acres as a tenant and remained there until 1943. He states that at the time he went to the farm his father, William Hewitt, told him that he would always have a home there. In 1943, he states that Arthur told him he could have the acreage as his home. The testimony was taken subject to an objection, under section 622.4, supra. The trial court held there was no competent evidence tending to show any interest in the tract in George. We agree.

The trial court dismissed plaintiffs' actions, quieted title in the defendant and, we think, correctly. There being no error, the judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur.