LEROY WAGNER, appellee, v. HARRY WAGNER, as trustee and individually, and E. C. NEWELL, trustee; LENA WAGNER et al., appellants.

No. 48995.

(Reported in 79 N.W.2d 319)

NOVEMBER 13, 1956.

REHEARING DENIED JANUARY 18, 1957.

J. R. McManus, of Des Moines, for appellants.

Don Beving and Earl Gritton, both of Des Moines, for appellee.

SMITH, J.—On January 25, 1936, Joseph B. (Ben) Wagner and wife, Ida, executed a voluntary deed of their Polk County farm to Harry Wagner (Joseph's son by an earlier marriage) "subject to an estate of and for my lifetime"; as of the same date Joseph B. Wagner, Harry Wagner and E. C. Newell executed a Trust Agreement which refers to said deed and in effect designates Harry and Mr. Newell as trustees: "After the demise of the said Joseph B. Wagner and the completing of title to the farm * * * the said trustees to be the sole judge of the propriety of either selling immediately or * * * holding said farm to sell at an advantageous price * * *." The instruments were filed for record practically simultaneously on January 31, 1936.

The trust instrument also purports to convey to the trustees all of Joseph's personal property, "title to invest (sic) immediately, including" (here follows an exhaustive list of material, farm equipment, livestock, grain, motor car, etc.).

The instrument provides details of management, payment of taxes, etc., and final disposition of "any remaining sum * * * and funds from the sale of said farm when sold in the following manner: One third * * * to the widow of said Joseph B. Wagner,

one third to the said Harry Wagner, and the remaining one third to be paid from time to time by said trustees to the use of LeRoy Wagner and his two sons Raymond Wagner and Gerald Wagner, the times and amounts of said payments shall be in the sole discretion of said trustees * * *." LeRoy's sons (and wives) have since quitclaimed their interests to LeRoy.

In August 1948, Joseph B. and Ida Wagner brought a suit against his sons, Harry and LeRoy Wagner, and LeRoy's sons, Raymond and Gerald, also against Harry Wagner and E. C. Newell, as trustees, to set aside the deed and trust agreement of· January 25, 1936, alleging fraud and other grounds.

That earlier case was before us twice (240 Iowa 1113, 38 N.W.2d 609, and 242 Iowa 480, 45 N.W.2d 508). The decision on the first appeal (by plaintiff) reversed the judgment below, which had dismissed the suit on motion attacking the petition. The case was remanded for completion of issues and trial on the merits. The actual trial subsequently resulted in a decision for plaintiffs canceling both instruments. The second appeal followed, and a second reversal, which upheld the validity of both instruments and a decree to that effect was entered upon remand (March 16, 1951).

Joseph B. Wagner, in the meantime, executed a will August 19, 1949 (about the time he and Ida commenced the suit just referred to) followed by a codicil thereto, March 6, 1950. By these instruments he purported to give his wife, Ida, a life estate in the farm or her distributive share therein if she should so elect. In the latter event he provided "I give the balance of said farm to my son, LeRoy Wagner."

This devise to LeRoy was with a proviso that he pay (within one year after he comes into possession) a certain sum to each of Harry's two children and a certain smaller sum each to Harry and his wife Lena. The codicil reduced these amounts. There were other provisions not necessary to mention except that the "household goods, furniture and furnishings," and one third of the rest of the personal property were to go to Ida and the other two thirds to LeRoy. Ida predeceased her husband however, so provisions for her in the will and trust agreement need not be considered except to determine the disposition of that part of the

property that would have been hers under the various instruments had she survived her husband.

Defendant E. C. Newell testifies he never took possession of the trust property and never performed any act as trustee except once upon request he signed an application with the Farm Credit Commodity "for seed oats or something like that." Harry Wagner never took possession in any capacity until 1951, the year before his father died, when he (as trustee) brought action to oust the tenant. He himself started farming the place the spring his father died. As witness he testified "Well, I owned the farm at that time." That is still his contention here.

Impetuous, old, Joseph Ben Wagner, died July 1, 1952, 94 years old, leaving no widow nor much else, except material for more litigation. December 31, 1952, LeRoy commenced the instant case. He claimed ownership of the farm, "subject only to the interest and ownership therein" of his brother, defendant Harry Wagner, pursuant to the deed and trust agreement of January 25, 1936, "which the plaintiff alleges and believes to be invalid, illegal and void."

He was not too sure of that ground however, for he retained a prudent "anchor to windward", alleging "That in any event the interest of the defendant, Harry Wagner, and all other defendants, cannot exceed an undivided one third." The other defendants named are the trustees, Harry individually, and Harry's wife and two children. LeRoy's boys, Raymond and Gerald, are also named, but as already stated they and their wives have deeded whatever interest they had to their father.

Plaintiff claims ownership as a beneficiary under his father's will, but alternatively under the trust which he believed invalid. He prays that the interests of the parties be adjudged and title quieted and proceeds divided accordingly.

Defendants, other than plaintiff's sons, stand on the deed and trust agreement and allege "no property passed by the purported Last Will and Testament and Codicil thereto * * * as the said Joseph B. Wagner had previously disposed of all his property" through said deed and trust agreement. They contend however that the deed was absolute and that plaintiff was estopped to claim otherwise.

The trial court awarded an undivided one-third interest in the real estate to Harry Wagner (under the trust); and an undivided two thirds to LeRoy Wagner, one third under the trust and his sons' deeds, and one third under the will, disposing of the lapsed share that would have gone to the widow under the trust. The latter however was subject to payment of $400 each to Thurston Wagner and Cledytha Wagner, children of Harry Wagner, and $100 each to Harry Wagner and wife, Lena, "pursuant to the last will and testament of Jospeh B. Wagner, deceased."

The decision upholds the validity of the trust and holds that the farm is a part thereof but states: "It is conceded that this trust is now subject to termination"; also: "The purpose of this trust has been served and the trustees are bound" by the language of the trust agreement which provides: "shall close the trust estate upon both of said boys (LeRoy's sons) becoming twenty-one years of age." That time having arrived their deeds to their father convey to him any equity they may have otherwise had under the trust.

Defendants Harry Wagner, as trustee and individually, and his wife and children are the appellants.

I. We are reluctant to rethresh old straw gone over in prior appeals of this case. But the sons seem to have inherited some of the stubbornness of their aged parent. The opinions on those appeals seem to us quite clearly explanatory of our view of the trust as being legal and covering both real estate and personal property. They hold the deed to Harry Wagner was a transfer of the fee to him as a trustee only and for certain purposes and not to him absolutely. By signing the trust agreement he declared or acknowledged he accepted the deed in that capacity.

The transaction clothed him with the legal title in trust so he and his cotrustee could carry out the plan of a choleric, seventy-eight-year-old man to insure that at grantor's death no part of his property could be reached by his son LeRoy's divorced wife; and perhaps also to guard it in the meantime from *possible* creditors, or claimed creditors, of his own, injured, or claiming injury, by *possible* outbreaks of his own ungovernable temper.

There was no illegality in either purpose. He was under no obligation to LeRoy's creditors, nor is there any indication Joseph himself was indebted or was seeking to conceal his property to defraud. He was making an actual disposition of it. The instruments were recordable and were promptly recorded. There was no badge of fraud.

Appellants here argue that the trial court's findings in that earlier case show "Judge Franklin took the view that personal property only was involved in the trust agreement" and they add: "That is our view of the matter too. Furthermore, that finding has never been drawn in question or appealed from. It became the 'law of the case.'" Appellants overlook that after the second reversal sent the case back for decree the trial court entered one (March 16, 1951) in which the findings of fact and conclusions of law upon which the judgment had been based were "annulled, cancelled, set aside and (held) of no force and effect." That decree was approved at least as to form by all attorneys on both sides, and has never been attacked.

The appellants' brief (ignoring that the *decision* in that former case was *reversed)* then proceeds to argue that the trust agreement "does not purport to be a declaration of trust by Harry Wagner" but operated merely as an acceptance of a trust in personalty. And the concept is attempted to be supported by the argument that Joseph B. Wagner "took the position in the prior litigation * * * that the warranty deed to Harry Wagner was a conveyance of the *fee* title and *not a deed in trust,"* and that plaintiff here, "being in privity with Joseph B. Wagner is estopped to assert the contrary."

The trial court in the instant case answered the argument by pointing out what we said on first appeal in the prior case: "The trust agreement includes the entire tract of real estate"; also by stating that the deed and trust agreement were legally simultaneous and the trust instrument expressly provides for the trustees to sell the farm immediately or at their option to lease it and wait for a better price.

The trust instrument (we add) also directs the distribution of the proceeds "so obtained [by sale of the real estate] to the use of the trust" and provides the trustee "shall distribute and

pay out the same as hereinafter directed * * *." The intention is determined by the language of the two instruments read together in light of the circumstances and not by the donor's interpretation after he changed his mind ten or twelve years later. Nor is it established by a finding of a trial court after the judgment based thereon has been reversed. The authorities cited do not support appellants' theory at this point. We do not know of any authority that does.

We hold now as we did then that the execution of the two instruments was one transaction and that together they set up a trust in both real and personal property, and the legal title was placed in Harry's name to enable him, as trustee, to perform its duties. The language was not entirely workmanlike, but we apprehend no one was originally or seriously misled as to the meaning and purpose of the instruments.

II. Appellee, however, perversely ignoring that he has been held a beneficiary of the trust, and (understandably) preferring the broader provisions of decedent's will in his favor, argues that the trust arrangement violates our statutory rule against perpetuities (Code section 558.68):

"Every disposition of property is void which suspends the absolute power of controlling the same, for a longer period than during the lives of persons then in being, and twenty-one years thereafter."

He has not appealed from the decree and it is at least questionable whether he may urge the contention as an appellee. However we shall discuss it so there may be no mistake as to our position.

██ The wording of our statute of course does not conform in all respects with the common-law rule which was evolved by judicial and not legislative processes. The statement in 70 C. J. S., Perpetuities, section 3, may be accepted as an accurate statement of the common-law rule: No interest is good "unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest, * * *."

We must agree that our statute, though not mentioning the word, does relate to the time of *vesting*. Our decisions quite gen-

erally so assume. See Commentary by Prof. Robert W. Swenson, 36 I. C. A. 747; Phillips v. Harrow, 93 Iowa 92, 106, 61 N.W. 434; In re Estate of Trimble, 234 Iowa 994, 997, 14 N.W.2d 673; Bankers Trust Co. v. Garver, 222 Iowa 196, 202, 268 N.W. 568. See also Restatement, Trusts, section 411.

We find no indication of a perpetuity in these provisions under either the statute or the common-law definition. This was in the nature of a testamentary arrangement. It was a gift. Vesting was not delayed. There was only a postponement of the trustees' possession pending expiration of donor's reserved life estate.

Appellants also answer plaintiff's contention at this point by urging that the validity of the trust arrangement has already been litigated by Joseph B. Wagner and that he, and plaintiff claiming under him, are precluded from again attacking it even on some new ground not previously raised but equally available to them. We need not discuss this theory of res judicata however, but are impressed by its merit.

III. The trial court concluded "the share (one third) of the trust estate which would have gone to the widow of Joseph Ben Wagner, had there been a widow, has lapsed or failed and reverts to the maker of the trust and goes into his estate for distribution." The decree so provides. Neither the court's finding nor the decree elaborates this provision.

We think it sound. The trust instrument provided for distribution: "One third * * * to the *widow* of said Joseph B. Wagner * * *." The cestui que was not named by name. It was not a provision for "Ida Wagner," nor for "my wife." It was a provision for the settlor's "widow." Only by surviving him could his wife have become a beneficiary. There was no widow to receive that one-third share.

"It is a general rule of equity jurisprudence that where a donor conveys * * * property on a certain trust or for a certain purpose, and the trust or purpose fails, a resulting trust arises for the benefit of the donor * * * or * * * of his heirs * * *. The rule applies generally, irrespective of the cause of the failure * * * ; it applies in the case of uncertainty or indefiniteness of

the trust * * * or other failure as to beneficiaries * * *." 54 Am. Jur., Trusts, sections 197, 198, 199.

In 90 C. J. S., Trusts, section 201, page 128, it is said: "*Failure of trust.* Where for some reason a trust fails or is ineffective the property, in the absence of provisions to the contrary in the trust instrument, reverts to the settlor, and the trustees hold the bare naked title to the corpus as resulting trustees for the settlor, and such property or interest can be reached by the settlor's creditors."

The trial court here properly followed that rule. One third of the trust failed. It went, under Mr. Wagner's otherwise superfluous will, to LeRoy, subject to payment of the minor sums required by it.

We have perhaps gone into greater detail than actually necessary for disposition of this appeal but have felt the length of the controversy, if not the gravity of the issues, required another manful effort to attain finality. The decision of the trial court is affirmed.—Affirmed.

All JUSTICES concur.