LEROY WAGNER, appellee, v. HARRY WAGNER, as trustee and individually, et al., appellants.

No. 49392.

(Reported in 90 N.W.2d 758)

1312

June 3, 1958.

Rehearing Denied September 19, 1958.

J. R. McManus and Duffield & Pinegar, all of Des Moines, for appellants.

Don Beving and Earl Gritton, both of Des Moines, for appellee.

Thompson, J.—The litigations of the Wagners of Polk County have not yet reached the protracted length of Jarndyce v. Jarndyce; but they are beginning to present a serious challenge to our own "Jones County Calf" case. Those who wish may follow the previous appearances in this court of actions over the same tract of farm land which is involved in the case at bar, in Wagner v. Wagner, 240 Iowa 1113, 38 N.W.2d 609; Wagner v. Wagner, 242 Iowa 480, 45 N.W.2d 508; and Wagner v. Wagner, 248 Iowa 353, 79 N.W.2d 319.

In the latter case we made what we thought to be, in the language of Justice Smith, "another manful effort to attain finality." How greatly we failed the present controversy all too clearly proves. The defendant Harry Wagner, in particular, has proven to be a difficult person to convince. He does not surrender easily. Although defeated at every major point to date, and with our opinion in 248 Iowa 353, 79 N.W.2d 319, supra, seemingly ending all possibility of further contention on his part, he discovered another way to prolong the litigation; not a good way, as we shall presently make clear, but never-

theless a way, which necessitated another trial in the district court and brought about another appeal here.

We are not greatly concerned with the controversies decided by the first two appeals, supra. They concerned the validity of a deed from Joseph Ben Wagner and wife to Harry Wagner conveying the farm in question and a separate instrument which we held, in 242 Iowa 480, 45 N.W.2d 508, and in 248 Iowa 353, 79 N.W.2d 319, both supra, created a trust under which Harry Wagner held title. The issues in the first two cases above referred to were chiefly between Harry Wagner and his father, Joseph Ben Wagner, himself no mean litigator. (See 242 Iowa 480, 485, 45 N.W.2d 508, 510.) In the case in 248 Iowa 353, 79 N.W.2d 319, we affirmed a decree of the trial court which adjudged LeRoy Wagner, brother of defendant Harry Wagner, to be the owner of an undivided two thirds of the farm land involved; Harry Wagner to be the owner of the other one third; directed the closing of a trust under which Harry Wagner had had control of the realty and personal property of their father, Joseph Ben Wagner, then deceased; ordered an accounting by Harry Wagner of the personal property and of all moneys received by him as trustee; directed the partition of the real and personal property "in conformity with this decree and supplemental or subsequent decrees or orders of this court * * *"; and reserved jurisdiction "for the purpose of making such other and further orders and supplemental decrees as may be necessary with respect to the rights of the parties herein and the property subject thereto * * *." This decree was entered on August 3, 1955, and was in all respects affirmed by our decision in Wagner v. Wagner, 248 Iowa 353, 79 N.W.2d 319, supra. It should be noted that this case was commenced on December 31, 1952.

This was the status of the matter when, after a petition for rehearing was denied on January 18, 1957, it was returned to the Polk County District Court for further proceedings in accordance with its decree. Thereupon the parties proceeded to an accounting, with the result that, apparently by stipulation, a judgment was entered on March 11, 1957, in favor of LeRoy Wagner and against Harry Wagner in the sum of $13,000. On March 16, 1957, another supplemental decree was

rendered ordering the sale of the real estate and appointing a referee in partition to make the sale. On April 6, 1957, a public sale was had and the land sold to LeRoy A. Moeckley for $46,980.

At the time of the sale Hubert L. Buehler announced to the assembled attendance that he and Marjorie Grace Hayes Wagner had a deed to the land and claimed to own it, or at least an interest in it. Buehler is the husband of Cledytha Wagner Buehler, a daughter of Harry Wagner, and Marjorie Grace Hayes Wagner is the wife of Thurston Wagner, a son of Harry Wagner. Both Cledytha Wagner Buehler and Thurston Wagner as well as Lena Wagner, Harry Wagner's wife, were at all times parties to the action determined in 248 Iowa 353, 79 N.W.2d 319, and so of course bound by its judgments.

Some cloud having thus been thrown upon the title to the real estate, upon application of the plaintiff the trial court entered an ex parte order bringing Hubert L. Buehler and Marjorie Grace Hayes Wagner into the case as additional defendants. Ray Griffieon, who claimed to be a tenant of part of the farm, was also added. Thereafter all defendants moved to set aside the order, and their motions were denied. The additional defendants answered, the cause proceeded to trial, and the court set aside the deed to Buehler and Marjorie Grace Hayes Wagner, held they had no interest in the premises, and likewise canceled the lease which Griffieon had from Harry Wagner for the use of the farm for the year 1957. It is from this decree that all defendants have appealed.

The deed which the court set aside was from Harry Wagner and Lena Wagner, his wife, to their son-in-law and daughter-in-law above named. It was dated June 16, 1952, and bears the notarial jurat of one N. B. Wilson under the same date. It was filed for record in the office of the County Recorder of Polk County on March 28, 1957. No claim is made that LeRoy Wagner or anyone representing him had actual knowledge of the existence of the deed, if it did exist, until the date of the partition sale, April 6, 1957. In fact, the record shows that Harry Wagner's counsel did not know of the deed until that date.

I. Defendants' first proposition relied upon for reversal is that the trial court erred in bringing in the additional de-

fendants Hubert L. Buehler, Marjorie Grace Hayes Wagner and Ray Griffieon, by ex parte order. It is contended that the case had been finally tried and a final judgment reached as between the plaintiff and the other defendants, and so there was no jurisdiction to add new parties.

So far as the order being ex parte is concerned, the defendants had a hearing upon their motions to set it aside. They were permitted to urge whatever they could have urged if they had had an opportunity to resist the plaintiff's application to bring them in, in the first instance. No prejudice appears.

Nor can we agree that the case had been terminated by a final judgment so that the trial court had lost jurisdiction. We have pointed out above that the court had expressly reserved jurisdiction to make such further orders and decrees as might be necessary with respect to the rights of the parties and the property. No order approving the referee's report of sale had been made, nor any order of distribution of the proceeds. In a much similar case the Supreme Court of the United States held that, although a decree in partition had been entered some time before, the suit was "still pending" so that intervention by third parties might be permitted. Montoya v. Gonzales, 232 U.S. 375, 34 S. Ct. 413, 414, 58 L. Ed. 645. The modern trend is to permit bringing in additional parties that all issues may be settled in one lawsuit. Here the title under which the referee was selling was challenged; an attempt was being made to throw a cloud upon it through the deed from Harry Wagner and wife to their son-in-law and daughter-in-law. The court still had jurisdiction of the matter, and it properly brought in the additional parties claiming an interest in the realty.

II. In apparent defiance of the holding of this court in Wagner v. Wagner, 242 Iowa 480, 45 N.W.2d 508, that he held title only as trustee, Harry Wagner seems to have been at all times claiming absolute ownership of the entire tract. The warranty deed dated June 16, 1952, upon which appellants rely here, attempted to convey the whole title, subject to life estates in the grantors. The defendants argue that, even if he did not have the entire interest, Harry Wagner was in fact the owner of one third of the land, and so his deed conveyed what-

ever he had. It may be granted this would be true if the deed were valid. But we find an insuperable obstacle to the validity of the deed in the fact that the evidence shows clearly there was no effective delivery. The trial court made no finding on this point, but put its holding upon other grounds. However, we think the record so conclusively shows a lack of delivery that we need not consider the other reasons which the trial court found sufficient for its decree setting aside the conveyance and holding it ineffective.

An interesting question suggests itself at this point. Is a decree in partition subject to challenge by the holders of an unrecorded deed who were not made parties to the action and whose interest was unknown at least to the plaintiff in the suit, all holders of record title being made parties? If so, a serious handicap is placed upon partition actions. However, the question is not raised or argued, and we make no pronouncement.

 Nor do we concern ourselves with the question whether the deed was actually executed on June 16, 1952. If it was so executed, it was not delivered at that time, nor until all issues between the record titleholders had been adjudicated in the partition action. Delivery is essential to the validity of a deed. Title does not pass through an undelivered conveyance. Dyson v. Dyson, 237 Iowa 1285, 25 N.W.2d 259; Lathrop v. Knoop, 202 Iowa 621, 210 N.W. 764. It is also settled that the burden is upon one who alleges nondelivery of a recorded deed to show this defect by clear and convincing evidence; that delivery may be effected by acts, or words, or both; that delivery is essentially a question of the intent of the grantor; and that when a deed reserves a life estate in the grantor it is presumed that immediate operation of the deed is intended. For a discussion of these rules, with authorities, see Dyson v. Dyson, supra, at page 1288 of 237 Iowa, pages 260, 261 of 25 N.W.2d.

But, giving the deed in question here the full benefit of all rules set out above, it nevertheless appears beyond fair question that it was not delivered when it was dated, nor in fact before March 26, 1957, if then. After Hubert L. Buehler and Marjorie Grace Hayes Wagner had been brought in as defendants and the issues were joined, a trial was had. At this time

the plaintiff called defendant Marjorie Grace Hayes Wagner to the stand and examined her. She said that she then had possession of the deed; that she was present at Harry Wagner's home when it was executed, those present being the grantors, Harry Wagner and wife; her husband, Thurston Wagner; and Cledytha Wagner Buehler and her husband, Hubert, the other grantee in the deed. She saw the deed signed. Then when asked what was done with the deed at the time, she said "My father-in-law kept it. Q. He didn't give it to you or anyone else? A. Not at that time. Q. When did he give it to you? A. Just previous to bringing it to be recorded. Q. Now, this was recorded March 28, 1957? A. That is correct. Q. Is that the date? So that you actually didn't receive the original deed until just before that date, is that correct? A. Correct. * * * Q. * * * now, tell us again what day the deed was delivered to you? A. It must have been March 26 of 1957."

After a recess of court, the witness again took the stand and attempted to nullify the effect of the foregoing testimony by saying she did not understand or misinterpreted what was meant by "delivery." In response to leading questions from her own attorney—perhaps proper since she was technically under cross-examination—she said that she understood from the date she first saw the deed that she and Hubert Buehler had an interest in the real estate; that she understood the interest was given to her at the time the deed was executed. Under the circumstances, we prefer to believe her the first time.

Harry Wagner, also called by the plaintiff, testified that it was his intention that Hubert Buehler and Marjorie Grace Hayes Wagner would be the immediate owners of the interest in the real estate from the time the deed was made. If such was his intention, he adopted unusual means of evidencing it.

The record shows that all through the partition and accounting action which was begun in the trial court on December 31, 1952, and disposed of, so far as he was concerned, by the decision of this court on November 13, 1956, rehearing denied January 18, 1957, Harry Wagner was vigorously asserting ownership of and title to the real estate in question; although if the deed of June 16, 1952, was valid he had nothing more than a life estate. He at no time gave any hint that the grantees

in the deed had any interest; nor did they evidence any concern about what was happening in the litigation, although all adult members of their families, including their spouses, were parties thereto. Harry Wagner did not at any time advise his attorney who conducted the litigation in the trial court and the appeal of the existence of the deed. On September 7, 1955, he entered into a contract to sell a portion of the tract, for road purposes, to Polk County, with no mention of any remainder interest in the purported grantees of the deed. He made no federal gift tax return, although nothing was paid to him for the conveyance. Our recent case of Jeppesen v. Jeppesen, 249 Iowa 702, 710, 88 N.W.2d 633, 638, and the citations therein, are much in point upon the significance of the continued possession and control of the property by the grantor. The case also contains interesting and informative analyses of many of the rules governing the validity of the delivery of deeds; see pages 707 to 710 of 249 Iowa, 88 N.W.2d, pages 636 to 638 inclusive.

Perhaps as conclusive as evidence can well be concerning Harry Wagner's intention in the matter of the deed is shown by his testimony when asked by his counsel why the deed was not sooner recorded. After testifying that it had been delivered to Hubert Buehler at the time it was executed and remained in the latter's custody until just before it was recorded, when it was given to "Marj" Wagner for that purpose, this appears: "Q. And you remember what you told me as to why it had not been recorded before? A. Well, I didn't think it was the right time to record it. Q. Well, you remember saying this to me or this in substance, 'I didn't think the time was ripe' or something like that? A. Yes, that's right. I didn't think the time was right." The question being whether the grantor intended to pass control of the deed and so of the property, the foregoing permits only one possible answer. He says in effect that the determination as to when the deed should be recorded was his; he had control over it, and saw that it was recorded when, but not until when, "the time was ripe." It is significant that, although the record shows that Hubert L. Buehler, Lena Wagner and Thurston Wagner were present in the courtroom during the trial, none of them took the stand

to testify to matters concerning the execution and delivery of the deed of which they must have had some knowledge. This is particularly true as to Hubert L. Buehler, one of the grantees. Knowledge of the facts was particularly in their possession; it was not available to the plaintiff. Paulsen v. Paulsen, 243 Iowa 51, 60, 50 N.W.2d 567, 572; State v. Cotton, 240 Iowa 609, 625, 33 N.W.2d 880, 889, and cases cited. The conclusion that there was no effective delivery of the deed, at least until March 26, 1957, when it was given to one of the grantees to record, is inescapable.

III. This being true, the grantees were bound by whatever had occurred in the course of the litigation. One who receives title to real estate pendente lite is concluded thereby. 30A Am. Jur., Judgments, section 400, page 453; Hawkeye Life Ins. Co. v. Valley-Des Moines Co., 220 Iowa 556, 561, 562, 260 N.W. 669, 673, 105 A.L.R. 1018; Blanchard v. Ware, 43 Iowa 530, 531; Woodin v. Clemons, 32 Iowa 280, 287, 288.

IV. Since we have held the deed of June 16, 1952, was not delivered in any event until March 26, 1957, if then, it follows that the judgment against Harry Wagner entered on March 11, 1957, is a valid lien upon his interest in the real estate and attaches to the proceeds of the partition sale distributable to such interest, whether it be now owned by him or by the grantees. In addition, the transfer, if validly made at or immediately prior to the time of recording, would have been in fraud of creditors. The record shows Harry Wagner had no other property, real or personal, of any substantial value; and that the deed to his relatives-in-law was voluntary and without consideration. See Hatheway v. Hanson, 230 Iowa 386, 393, 297 N.W. 824, and cases cited. The case teems with badges of fraud and bad faith, both in withholding knowledge of the deed, if in fact it existed, all through the protracted litigation in the trial court and this court, and in attempting to assert it after the issues were apparently settled and the matter concluded. The defendants-appellants' position has no appeal to a court of equity.

V. The defendant Griffieon took his lease, under which

he claims, from Harry Wagner long after a lis pendens had been entered on January 3, 1953. Section 617.11, Code of 1950, provided:

> "617.11 Lis pendens. When so indexed said action shall be considered pending so as to charge all third persons with notice of its pendency, and while pending no interest can be acquired by third persons in the subject matter thereof as against the plaintiff's rights."

This gave notice to Griffieon of the action pending and of the issues therein; he cannot complain if it developed in the course of the litigation that his lessor had no right to lease to him, in derogation of the rights of the other owners and of a possible purchaser at partition sale. Additionally, the year 1957 is now past, and the question of possession of the land for that season is now moot. Nitta v. Kuda, 249 Iowa 853, 857, 89 N.W.2d 149, 151, and cases cited.

The decree and judgment of the trial court are in all respects affirmed with another hesitant hope of finality.—Affirmed.

All JUSTICES concur except SMITH, J., not sitting.