17828

John A. LEATHERS, Respondent, v. L. Hudson LEATHERS, Individually and as Trustee under a written trust, an oral trust, as Trustee under the Will of John Andrew Leathers, as Executor under the Will of Julia Leathers, and as Trustee of a voluntary trust, Appellant.

(121 S. E. (2d) 354)

*Messrs. Butler & Chapman,* of Spartanburg, *for Appellant,*

*George S. DePass, Esq.,* of Spartanburg, *for Respondent,*

August 24, 1961.

OXNER, Justice.

Numerous issues are presented by the pleadings in this case but the only one we are called upon to determine is whether L. Hudson Leathers has a contingent interest in the corpus of the trust created under the will of his father, John Andrew Leathers, for the benefit of John A. Leathers, Jr. While there is also involved on this appeal the question of whether L. Hudson Leathers has any interest in an *inter vivos* trust executed contemporaneously with the will and another trust set up two years later, it is conceded that the two last mentioned trusts were to be administered in accordance with the terms and conditions of the testamentary trust. Accordingly, a determination of whether L. Hudson Leathers has any interest in that part of the testamentary trust relating to John A. Leathers, Jr., will be decisive of whether he has an interest in the other two. He was named as trustee in all of the foregoing trusts.

The Court below held that L. Hudson Leathers had no interest in either of the three trusts and that the entire beneficial interest was vested in his brother, John A. Leathers, Jr. From this portion of the order, L. Hudson Leathers, individually and as trustee, has appealed.

In order to determine the extent of respondent's interest in this testamentary trust, we must first seek the intention of the testator and undertake to effectuate same unles such intention contravenes some well settled rule of law or public policy. *Black v. Gettys,* 238 S. C. 167, 119 S. E. (2d) 660. In construing this trust, it must be considered in relation to other relevant portions of the will.

The will was executed on March 28, 1934. After the usual direction for the payment of debts and funeral expenses, the residue of the estate was bequeathed and devised to testator's son, L. Hudson Leathers, in trust to manage and

control. He was directed to pay so much of the net income to testator's widow as might be necessary for her support, with permission to invade the corpus if the income was insufficient for this purpose. In the event that the net income was more than necessary for the support of the widow by an amount in excess of $1,000.00, the trustee was directed to divide such excess income equally between the testator's two sons, Hudson and John. It was further provided that if at any time before a division of the trust estate, either Hudson or John should have emergency needs which he was unable to take care of from his own resources, the trustee was authorized to invade the corpus of the trust to pay such expenses. He was not to charge such advancement against the son's distributive interest in the trust fund but to charge same against the whole trust estate. The testator's widow was permitted to occupy the residence in Spartanburg as long as she desired, with the right to any unmarried son to stay in the home. If the widow so desired, the trustee was directed to sell the home place and turn the proceeds over to the trust estate. Should this property not be sold before the widow's death, the trustee was directed to convey same to Hudson and John freed and discharged of all trusts. The testator directed that at his wife's death all the household goods should be equally divided between Hudson and John.

The foregoing is a brief summary of Items I to VI, inclusive. This controversy stems from Item VII of the will, which reads as follows:

"At the death of my said wife, it is my desire and I so direct, that the trust fund hereinabove created shall be continued until such time as my son, Hudson, shall have reached the age of thirty (30) years, at which time I direct my said Trustee to divide my said trust estate into two equal parts, one part to be forthwith transferred to my son, Hudson, freed and discharged of all trusts; the other one-half of my trust estate to be continued as a trust fund

for the sole benefit and use of my son, John, the entire income, after the payment of expenses of said trust, to be paid to my said son, John, at least twice a year. Should John's business ability ripen and mature to such an extent as in the opinion of my Trustee, and my good friends, L. W. Perrin and J. A. Chapman, Jr., or in the opinion of a majority of them should warrant the turning over to him of a part or the whole of the trust fund herein created for his benefit, and should John make such a request of the Trustee, my said Trustee is hereby authorized, empowered and directed to pay over to my said son, John, such part or the whole of the trust fund created for his benefit as in the opinion of my said Trustee would be wise and proper, freed and discharged of all trusts. Should my said son, John, request of my Trustee a greater sum of money than is yielded to him from the income of said trust estate, it is my desire that my said trustee use of the widest latitude in granting such request.

"Should either of my sons die before the time for the distribution of my estate as hereinabove fixed, leaving a child or children surviving him, then, and in that event, such child or children shall receive the part of my estate to which their father would have been entitled. Should either of my sons die without leaving a child or children surviving him but leaving a widow, then, and in that event, his share shall go one-half to his widow and one-half to his surviving brother under the terms of the trust hereinabove created, and in the event either of my sons should die without leaving either a widow or child or children surviving him, then his share shall go to his surviving brother under the terms of the trust hereinabove created."

The testator died on August 23, 1941. L. Hudson Leathers duly qualified as executor and trustee. The widow, Mrs. Julia Leathers, died on November 17, 1944, without ever having directed the sale of the residence. On November 20, 1944, the trustee conveyed the residence to himself in-

dividually and John as tenants in common. During November and December, 1944, he divided the trust estate consisting of stocks and bonds in two equal parts. One part he turned over to himself. He kept the remaining one-half in trust for John, who has been paid the income twice each year as provided in Item VII. It is conceded that John's business ability has never ripened and matured to such an extent as would require the trustee to turn over to him any part of the corpus of the trust.

As heretofore stated, the question presented is whether Hudson has any interest in the undistributed portion of this trust fund. He alleges he has a contingent interest. We gather from the record that his claim is that he would share in any undistributed corpus should John predecease him leaving no children. At the present time John is married but has no children.

We have no difficulty in ascertaining the intention of the testator. His first concern was for his wife. The trustee was directed to pay her such amount as might be necessary for her support. She was also given the privilege of occupying the residence. He next provided for any emergency needs of his two sons. After the death of his wife, the trust was to continue for the benefit of his two sons until Hudson was thirty years of age, at which time it was to be divided in two equal parts. One-half was then to be turned over to Hudson freed and discharged of the trust. Evidently entertaining some doubt as to the business ability of John to manage his half, the testator concluded not to give him immediate possession but to continue the trust for his "sole benefit and use." John was to receive the income at least twice a year but the trustee and the two named friends of the testator were to determine when John's business ability was such as to justify turning over to him the whole or any part of the principal. Equality between John and Hudson is implicit throughout the will. After the division of the trust estate between Hudson and

John, there was no gift over of John's part of the corpus in the event he died before the full amount of the principal was turned over to him. Doubtless the testator would have provided for such a contingency had he intended not to give the whole beneficial interest to John. There is a presumption against intestacy as to any part of the corpus. We are convinced that it was the intention of the testator that the principal of John's share should ultimately go to him or his estate.

The claim by appellant of a contingent interest is not based on the possibility of inheritance should John die intestate before the full amount of the corpus is distributed. His claim is under the last paragraph of Item VII which provides for a gift over in the event either son should "die before the time for the distribution of my estate as hereinabove fixed." His counsel argues that this has reference to the time when John's ability ripens and matures to such an extent as would warrant the trustee in turning over to him a part of the corpus. The proposed construction is clearly unsound. Surely it would not be contended that this paragraph applied to Hudson after he had received his half of the trust estate. The testator was not referring to two separate distributions, one to Hudson and another to John. The uncertain time when the corpus was to be turned over to John was not the distribution contemplated. The only reasonable construction is that the phrase "as hereinabove fixed" refers to the time fixed for the division of the estate between the two sons. This being so, the contingency specified in this paragraph has no application now because neither of the sons died before the time fixed for the distribution of the estate.

As stated by Scott on Trusts, Volume 1, Section 128.2, page 669: "Not infrequently a testator leaves property in equal shares to several relatives and provides that the share of one of them shall be held in trust for him and that the trustee shall pay the income to him. In such a case there

is ordinarily an inference that the testator intends to treat all the objects of his bounty alike, except that one of them is not to have the management and control of his share; the inference is that his interest is not to be limited to a life interest when all the others are to receive an absolute interest in their shares."

In Restatement of the Law, Trusts (2d), Section 128, Comment (c), we find: "Where property is transferred in trust to pay the income to a designated person and to convey the principal to him whenever the trustee in his discretion deems it wise to do so, it is a question of interpretation whether the designated person is given the whole beneficial interest, or only an interest in the income and an interest in the principal contingent on the exercise by the trustee of the power to convey the principal to him during his lifetime. If there is no gift over of the principal, the inference is that the beneficiary has the whole beneficial interest, and if he dies before the trustee transfers the property to him, the trustee can be compelled to transfer it on his death to his estate."

A case quite apposite is Millard's Appeal, 87 Pa. 457. In that case the testator bequeathed a sum to his executrix in trust to invest in specified securities and pay over the interest or dividends therefrom to his nephew, Joseph M. Millard, and, in case the nephew should be sober and industrious in his habits, "to pay over to him, from time to time, such portions of the principal as she in her judgment shall deem right and proper, or she may at any time she may deem it right and proper, pay over to him the whole of the said" fund. After the death of the nephew, it was held that the balance remaining of the principal should be paid to his administrator. The Court said:

"We are of opinion that the legacy vested. It was evidently so intended by the testator. There is no bequest over, and there is no restriction to the life of the first taker. There was an absolute direction to pay the interest to Jo-

seph, with authority to pay over the principal in the discretion of the trustee. A gift of the income of a fund without a limitation as to time is a gift in perpetuity and carries the fund itself * * *. The testator plainly intended to give the entire beneficial interest to his nephew. It is true he withheld the enjoyment of the principal until his trustee should be satisfied that he was sober and industrious in his habits, but this in no wise affects the question of intent. The testator evidently hoped and expected that his nephew's conduct would eventually entitle him to receive the principal. He made no provision for any other contingency. The condition upon which the principal was to be paid having become impossible by the act of God, *i. e.,* by the death of Joseph M. Millard, what is to be done with the fund? The trustee cannot keep it; there was no gift over, and it does not pass under the residuary clause. Either the testator died intestate as to this fund, or it must go to the personal representative of Joseph M. Millard. The law never presumes an intent to die intestate as to a part of a testator's estate. No such intention can be gathered from this will. The plain object of the clause in question was to provide for his nephew, and at the same time prevent the fund from being wasted through idleness or intemperance."

Our conclusion that the entire beneficial interest in the trust is now vested in John A. Leathers is further supported by *Kennedy v. Kennedy,* 190 S. C. 53, 2 S. E. (2d) 33.

Appellant contends that the will should be construed as creating a spendthrift trust. Otherwise, it is argued that John's interest could be transferred by him or reached by his creditors, possibilities which it is claimed the testator intended to prevent. This argument puts the cart before the horse. The question to be determined is whether the entire beneficial interest in the corpus of the trust is vested in John. If the testator intended to restrict the rights of creditors, he did not do so by limiting John's interest to

a life estate. We intimate no opinion as to whether a creditor of John could reach the corpus, nor whether it could be transferred or encumbered by him.

All exceptions are overruled and the judgment of the Court below is affirmed.

TAYLOR, C. J., MOSS and LEWIS, JJ., and J. B. NESS, Acting Justice, concur.