**In the Matter of the ESTATE OF Hans JOHNSON, Deceased.**

**Carol Jean Gerdes, Appellant,**

**Dennis Johnson, Byron Johnson, Irene Drane, and Chester Johnson, Appellees.**

No. 84–1731.

Supreme Court of Iowa.

May 21, 1986.

David J. Price of Price, Correll & Sheerer, Cedar Falls, for appellant.

LeRoy H. Redfern of Redfern, McKinley, Mason & Dieter, Cedar Falls, and Emil Trott, Jr., of Barrett & Trott, Des Moines, for appellees.

McGIVERIN, Justice.

In this case, we must determine whether the will of decedent Hans Johnson created a vested proportionate remainder interest in his son, Robert Johnson, which in turn passed when he died under the residuary clause of Robert's will to his brother, Dennis Johnson, or whether Robert only received a life income interest coupled with a general testamentary power of appointment.

The executor of the estate of Hans Johnson recommended in the final report to the district court that Robert's share pass to his brother, Dennis. One of the other beneficiaries of Hans' estate, Hans' daughter Carol Gerdes, objected to the proposed distribution. The district court approved the final report and found that Robert's share passed to Dennis under the terms of Robert's will. Carol appealed, and we transferred the case to the court of appeals. That court reversed the district court ruling and held that Robert did not receive a vested proportionate interest in Hans' estate. We granted the application for further review of Dennis Johnson, Byron Johnson, Irene Drane and Chester Johnson, who are other beneficiaries of Hans' estate. We now vacate the decision of the court of appeals and affirm the judgment of the district court.

Decedent Hans Johnson died on October 28, 1952 as a resident of Grundy County. His estate was opened in 1952, and the executor's final report was approved in 1984. The order approving that report is the subject of this appeal.

Hans was survived by his wife, Edel, and eight children: Minnie, Carol, Robert, Dennis, Byron, Irene, Chester and Margaret. Minnie was adopted out of the immediate family before Hans died.

Hans' will was drafted by a layman and executed on October 17, 1952. After the usual direction for payment of debts and funeral expenses, the will provided that Hans' wife, Edel, would receive a life estate in all decedent's property and that their remaining minor child, Carol, would receive $500 per year until she reached age

eighteen. Subject to these provisions, the remainder of the property was to go to Hans' children, except Minnie.

Upon Edel's death, Minnie was to receive a specific bequest of $500, and then the remainder of the estate was to be divided into seven equal shares and given to each of the remaining seven children of the testator. The share of Robert was to be put into a "spendthrift" trust with Dennis as trustee. Dennis was directed to pay the net income of the trust fund to Robert and authorized to terminate the trust if he believed Robert was capable of managing his share. This summarizes the basic scheme of distribution as described in Hans' will.

This controversy stems from paragraphs four and five of Hans' will. These provisions state:

Paragraph 4. Subject to the foregoing, I give the remainder of my property to my children except as hereafter stated, share and share alike, as their property absolutely and by right of representation, provided however, (and Paragraph (2) is subject to this provision) that should my wife re-marry, then her life estate shall cease and she shall take her one-third interest, and this paragraph is also subject to this, that Minnie Johnson Lund, who has been adopted, shall not be included in or among the children above referenced to but I hereby give her the sum of $500.00 to be paid by my executors, however, the share that my son Robert Johnson shall receive by reason of the above provisions shall be held in trust as hereinafter provided.

Paragraph 5. I hereby appoint my son, Dennis Johnson, as trustee for and on behalf of Robert Johnson and said trust fund is to be received and invested or reinvested according to the best judgment of said trustee. The net income of said trust fund shall be paid to my son Robert Johnson annually during his natural life but subject to the rest of this paragraph, and on his death the principal of said fund shall be paid as he may

direct by Will or upon his failing to direct or appoint, in equal portions to his wife and children, share and share alike. The right of my said son to receive such income or principal shall not be anticipated or assignable nor in any event applicable to the payment of his debts. The right of any beneficiary to receive the income from this trust created by this will shall be free from the interference or control of his or her creditors. The trust may also be terminated when in the best judgment of the trustee the said Robert Johnson is able and capable of managing his affairs, and in that event the trustee is authorized and empowered to turn over to the said Robert Johnson any portion of the trust when he deems it advisable.

In 1956, Robert died in an automobile accident while a resident of California. He had no surviving spouse or children. No trust for Robert was ever established because he predeceased the life tenant, Edel. Thus, the paragraph of the will creating the trust and the powers of appointment did not become operative.

Robert's will, which was executed in 1944, left all of his property to his brother, Dennis Johnson. It provided in pertinent part:

I give, devise and bequeath unto my brother, Dennis Elmer Johnson, all of the property, whether real, personal or mixed, or whatsoever character and wheresoever situate[d], of which I may die seized or possessed, in fee simple and with absolute power of disposition.

Robert's will and estate were probated in California and subsequently recorded in Grundy county. *See* Iowa Code §§ 633.33–.34 (1954).[1]

Hans' surviving spouse, Edel, died testate on May 8, 1983. Her will gave all of her property to her daughters, Margaret and Carol.

On June 7, 1984, the executor of the Hans Johnson estate filed the final report.

---

**1.** The procedures for admitting in Iowa a will probated in another state or country are out-lined now in Iowa Code sections 633.496–.498 (1985).

The executor recommended in his proposed distribution that Robert's one-seventh share remainder interest in Hans' estate pass to his brother, Dennis. Thus, Byron, Irene, Chester, Margaret and Carol each would receive a one-seventh interest in the estate's assets, and Dennis would have a two-sevenths interest. Carol filed an objection to the final report challenging this proposed distribution. Carol contended that Hans died intestate as to Robert's one-seventh remainder interest.

After a hearing on the matter, the district court found that Hans intended to create and vest a remainder interest in Robert and that upon Robert's death, this interest passed under his will to Dennis. Thus, the executor's final report was approved. Carol appealed, and we transferred the case to the court of appeals. The court of appeals reversed the district court's ruling and held that Robert only received a life income interest in the remainder with a general power of appointment, and that when Robert failed to exercise the power, his interest reverted to Hans' estate and passed as partially intestate property to Hans' surviving seven children, including Minnie.

The controlling issue raised on further review is whether Hans Johnson bequeathed to his son, Robert, a vested proportionate remainder interest or only a life income interest coupled with a general testamentary power of appointment.

We conclude the district court correctly found that Robert's remainder interest was vested and passed to Dennis under the terms of Robert's will.

I. *Standard of review.* This appeal involves a challenge to the district court's approval of the final report of the executor of Hans' estate. A hearing on objections to a fiduciary's final report is an equitable proceeding, Iowa Code section 633.33 (1983); thus, our review is de novo. Iowa R.App.P. 4; *In re Estate of Roehlke*, 231 N.W.2d 26, 27 (Iowa 1975). Although we give deference to the district court's

findings of fact, we are not bound by them. Iowa R.App.P. 14(f)(7).

We also consider well-settled rules of will construction. These general principles of construction were set forth in *In re Estate of Larson*, 256 Iowa 1392, 1395, 131 N.W.2d 503, 504–05 (1964), and more recently in *In re Estate of Eickholt*, 365 N.W.2d 44, 46 (Iowa Ct.App.1985). Therefore, we need not repeat them here.

II. *Hans' intent.* In order to determine the extent of Robert's interest in Hans' testamentary disposition, and, thus, to ascertain whether Robert was capable of disposing of the property to Dennis in the residuary clause of his will, we must first seek to determine the intention of the testator, Hans, and undertake to effectuate that intent. *See In re Estate of Anderson*, 359 N.W.2d 479, 480 (Iowa 1984). In construing the testamentary trust concerning Robert, it must be considered in relation to other relevant portions of the will.

In his 1952 will, Hans' first concern was for his wife, Edel. She was given a life estate in all Hans' real and personal property and the right to receive income and the right, under the direction of the court, to invade the principal to maintain her standard of living and to pay for necessities. Hans next provided that his minor child, Carol, was to receive $500 per year until she reached age eighteen. This was to be paid from the principal. Upon the death of Edel, Hans directed that all seven of his children, excluding Minnie, were to receive equal shares of his estate. Evidently entertaining some doubt as to the ability of Robert to manage his one-seventh interest, the testator decided not to give him immediate possession, but to create a trust for him. Robert was to receive the income but the trustee, Dennis, was to determine when, if ever, Robert's business ability was such as to justify turning over to him the whole or any part of the principal.

Equality between the seven children is implicit in the will. Hans was capable or aware of the ability to disinherit a child, as

is evidenced by his treatment of Minnie.[2] He provided that the seven children were to receive equal shares "absolutely and by right of representation," which ensured that a deceased child's estate would receive his or her share of the assets. Even Carol, in her brief, concedes that it was not Hans' intent to disinherit Robert although this would be the result if she prevailed.

The spendthrift trust provision including the powers of appointment only would become effective or operative if Robert outlived his mother, Edel, the life tenant, which he did not. The vesting of Robert's interest was not delayed. There was only a postponement of the trustee's possession pending expiration of Edel's life estate. *Wagner v. Wagner*, 248 Iowa 353, 360, 79 N.W.2d 319, 323 (1956). The powers of appointment only became operative if Robert outlived Edel and the trustee determined that Robert was not capable of managing his share. Neither of these two events occurred, in fact, Dennis testified that if he had become trustee, he would have turned over the trust to Robert.

Therefore, we conclude, as did the district court, it was the intention of the testator that Robert should receive his one-seventh share and that the principal of Robert's share ultimately passed to his estate.

II. *Relevant authorities. In re Estate of Bunting*, 220 Iowa 186, 261 N.W. 922 (1935), involved a claim similar to that presented here, namely whether the beneficiary of a trust received only a life income interest or a whole beneficial interest in the property. Due to factual differences, we reached a different result in *Bunting* from the one appropriate under the record in the present case.[3] However, language from

the *Bunting* case is helpful in resolving the issue in the present case.

The court in *Bunting* recognized a line of Iowa and other cases that held "trusts under consideration ... were terminated upon the death of the beneficiary and the corpus of the trust estate passed as a part of the beneficiary's estate" (citations omitted). *Id.* at 191, 261 N.W. at 925. An important factor in these cases was that the bequest had been made by the testator directly to the beneficiary and not to the trustee. One such case, *Meek v. Briggs*, 87 Iowa 610, 54 N.W. 456 (1893), was discussed in *Bunting* as follows:

> [In *Meek*], the bequest was not to the trustee but directly to the beneficiary, with a provision in a subsequent paragraph that trustees were to take charge and manage the estate until such time as the beneficiary should marry. Clearly, the intention there was that the beneficiary was to have an absolute estate. The provision with reference to a trusteeship was merely for the management and control and conservation of the estate during the period of the beneficiary's life when it may be assumed the testator believed the beneficiary was incapable of exercising the discretion necessary to properly manage the estate.

220 Iowa at 191–92, 261 N.W. at 925.

On the other hand, in *Bunting*, the bequest was made directly to the trustee, testator's wife, not to the beneficiary, testator's daughter. Hans' will, however, bequeathed his property to his children, including Robert, absolutely. In a separate paragraph Hans set up the testamentary trust with a trustee to manage and control the property until Robert was capable of

---

**2.** In 1952 when Hans died, no statute was in effect such as Iowa Code 633.223(1) (1985) (a lawful adoption, not by the spouse or surviving spouse of a natural parent, extinguishes the right of intestate succession of an adopted person from his or her natural parents).

**3.** In *Bunting*, the trustee was given complete discretion as to the expenditure of interest income and the principal. The facts indicated that the beneficiary of the trust was deeply in debt and that any money left to her immediately

would be seized by creditors. *In re Estate of Bunting*, 220 Iowa 186, 189, 261 N.W. 922, 923–24 (1935). Here, Robert was entitled to receive the entire amount of net income from the trust. Dennis, as trustee, only had discretion regarding whether to turn over the principal or a portion of it to Robert. Further, there were no compelling circumstances existing under this record, as were present in *Bunting*, to indicate that the testator did not intend to vest an absolute right to the entire fund in the beneficiary.

managing his share. The trust provisions only became relevant if Robert survived the life tenant, Edel. This did not occur; thus, paragraph five of the will which contains the trust provisions and the powers of appointment did not become operative. We believe the language of Hans' will which created the bequest to Robert more closely resembles that used by the testator in *Meek* rather than that present in *Bunting*.

Further, we note it is well-settled that "an absolute bequest in one paragraph of a will cannot be nullified by a later provision in the same instrument, repugnant to and inconsistent with the first." [4] *Blackford v. Anderson*, 226 Iowa 1138, 1171, 286 N.W. 735, 753 (1939) (citations omitted). Because we have concluded that paragraph four of Hans' will created an absolute bequest to all seven of his children, we do not believe that the gift to Robert subsequently can be destroyed in paragraph five of the instrument.

Therefore, the language used in Hans' will, as interpreted in light of all the circumstances and the relevant Iowa authorities, reaffirms our belief that the testator intended that paragraphs four and five of the will would vest an absolute remainder interest in his son, Robert.

As was stated by Professor Scott:

Not infrequently a testator leaves property in equal shares to several relatives and provides that the share of one of them shall be held in trust for him and that the trustee shall pay the income to him. In such a case there is ordinarily an inference that the testator intends to treat all the objects of his bounty alike, except that one of them is not to have the management and control of his share; the inference is that his interest is not to be limited to a life interest when all the others are to receive an absolute interest in their shares.

2 A. Scott, *Scott on Trusts* section 128.2 (3d ed. 1967).

The courts in other jurisdictions which have been faced with construing similar will provisions are in accord. *See Leathers v. Leathers*, 239 S.C. 94, 121 S.E.2d 354 (1961) (provision stating that principal of trust could be turned over to beneficiary should his business ability ripen and mature created an absolute interest in the beneficiary); *Seamans v. Phipps*, 342 Mass. 28, 171 N.E.2d 846 (1961) (similar provision intended to give beneficiary entire interest subject only to safeguards against beneficiary's improvidence).

Carol contends that the will should be construed to create in Robert a life income interest coupled with a general testamentary power of appointment. She argues that if Robert's interest were vested, he could have mortgaged, alienated, or otherwise encumbered the property before Edel died and the provisions of the spendthrift trust were activated. While this was a possibility that arguably the testator intended to prevent, we believe the ultimate intent of Hans not to disinherit Robert prevails. Thus, we conclude that Robert's interest vested and that the residuary clause of his will, which was admitted in evidence in this case, passed his interest to his brother Dennis.

Under our view of this case, we need not consider the other contentions raised by the parties.

III. *Disposition.* Accordingly, we vacate the decision of the court of appeals and affirm the district court's approval of the executor's final report.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.

All Justices concur except REYNOLDSON, C.J., and UHLENHOPP and LARSON, JJ., who dissent.

---

**4.** This proposition has been clarified in more recent cases and this so-called repugnancy doctrine only applies, where as here, "subsequent provisions of a testator's will are clearly in conflict with specific gift provisions and both cannot stand". *In re Estate of Roberts*, 171 N.W.2d 269, 272–73 (Iowa 1969).

UHLENHOPP, Justice (dissenting).

I agree with the decision of the court of appeals except on one issue, and I dissent from the decision of the majority of this court. The appeal presents three principal issues: What interest did Robert take under Hans' will? Did Robert exercise his power of appointment? Who takes the trust property on Robert's failure to appoint?

I. What interest did Robert take? Paragraph 4 begins, "Subject to the foregoing [other gifts], I give the remainder of my property to my children except as hereafter stated, share and share alike, as their property absolutely and by right of representation...." The majority holds that Robert took a remainder in fee as to his share, and points to the language in paragraph 4 that Hans' children take the property "share and share alike, as their property absolutely and by right of representation...."

If the will consisted only of that last quoted language I would agree with the majority. We must, however, consider all parts of a will and try to give effect to them all. *In re Lamp's Estate*, 172 N.W.2d 254, 257 (Iowa 1969). Just before the last quoted language, Hans states that he gives the remainder of his property to his children "except as hereafter stated," share and share alike, etc. Continuing in the same sentence, Hans then creates three exceptions. First he gives his widow dower instead of a life estate should she remarry. Had she remarried the children's shares would thus have been cut down. Next he reduces the gift to Minnie from a child's share to $500. This increased the shares of the other children. Finally, he gives Robert's share in trust "as hereinafter provided." We must thus look "hereinafter" to ascertain what Robert takes.

Proceeding to paragraph 5, Hans establishes a spendthrift trust for Robert. The net income is to go to Robert for life "and on his death the principal of said fund shall be paid as he may direct by Will or upon his failing to direct or appoint, in equal portions to his wife and children, share and

share alike." The trustee may, if in his judgment Robert can manage his affairs, pay some or all of the trust principal to him.

This language seems straightforward: Robert has a life income from the trust (plus authority in the trustee to pay more), and he has a power to appoint the remainder.

The majority's holding that Robert owns the remainder in fee raises perplexing questions. If Robert owns the remainder in fee, he could devise the remainder without having the power Hans gave him. Why then would Hans give him the power of appointment? Was that an idle act? Again, Hans included a devise of the trust property in the event Robert did not exercise his power. Why would Hans cover the contingency of failure to exercise the power if Robert received a fee? In addition, the devisees Hans names in default of appointment are not necessarily the same as the heirs Robert would have had if he had died intestate owning the remainder in fee; they are Robert's wife and children share and share alike. If Robert had died intestate leaving a wife and children, would they have taken from Hans in equal shares as paragraph 5 directs in default of appointment, or from Robert in the proportions directed by the intestacy laws because Robert owned the remainder in fee as the majority holds?

Concluding that paragraph 4 gave Robert a remainder in fee, the majority further holds that the gift could not be destroyed by paragraph 5, citing *Blackford v. Anderson*, 226 Iowa 1138, 286 N.W. 735 (1939) (repugnancy doctrine). My response to this is twofold. First, paragraphs 4 and 5 are not repugnant for the reason that paragraph 4 contains express qualifications: "except as hereafter stated" and "as hereinafter provided." My other response is that the repugnancy rule of *Blackford* and earlier cases has been substantially liberalized by two later decisions, perhaps as a result of Justice Thompson's remark in his special concurrence in *Schmidt v. Claus*,

250 Iowa 314, 318, 93 N.W.2d 592, 595 (1958):

> However, it seems proper to comment that the rule against repugnancy which we have adopted, and have applied here, is highly technical and generally has the effect, as in the instant case, of reaching a result which the testator did not intend and which is contrary to the express intent of the will if it is construed in accordance with its plain language.

The two later decisions to which I have adverted are *In re Estate of Roberts*, 171 N.W.2d 269 (Iowa 1969), and *In re Estate of Hansen*, 264 N.W.2d 746 (Iowa 1978). In *Roberts* this court reversed a finding of repugnancy and stated inter alia:

> Certainly the form of the will has no bearing on the intentions of the maker, and we have often held that the arrangement of the will or the order in which its clauses or paragraphs appear is not controlling and may be of little significance since the will must be read and construed as a whole.
>
> . . . .
>
> [I]n *Iowa City State Bank v. Pritchard*, 199 Iowa 676, 678, 202 N.W. 512, 513, it is said: "It is well settled that a testator cannot make an absolute devise of property in fee, and in a subsequent clause of his will defeat or destroy his gift or limit the enjoyment of the thing given." This view was specifically reaffirmed in *Schmidt v. Claus*, 250 Iowa 314, 317, 93 N.W.2d 592, 594. We find no fault with this rule of law and recognize that, whether it be called a repugnancy or an inconsistency, any attempt in a later paragraph of a will which of necessity will defeat, destroy or limit a specific bequest previously given is contrary to law and should be held void. It is obvious, however, where testator's intention is perfectly clear, the courts do extend every effort to find no inconsistencies and, where possible, they attempt to resolve conflicts that would tend to thwart the apparent will of the testator. *In re Estate of Fleck*, Iowa, 154 N.W.2d 865, 867, 868, and citations.
>
> . . . .
>
> Regardless of some past pronouncements, we now prefer the rule that only where subsequent provisions of a testator's will are clearly in conflict with specific gift provisions and both cannot stand, can the clear and obvious intent of the testator be disturbed and the subsequent provisions be declared ineffective.

*Roberts*, 171 N.W.2d at 272, 273.

In *Hansen* we affirmed a rejection of repugnancy and relied on *Roberts*. Referring to *Schmidt*, in which Justice Thompson made his comment, we stated:

> Whether we would today reach the result in *Schmidt* is doubtful, in view of the intervention of the *Roberts'* rule requiring all clauses of a will to be given effect if reasonably possible.

*Hansen*, 264 N.W.2d at 749. The current trend is thus away from the strictures of the old repugnancy rule.

For these reasons I agree with the court of appeals that paragraphs 4 and 5 of Hans' will can both stand and that Robert took a life income from the trust, the trustee had power to transfer to him all or part of the trust fund (but did not do so), and Robert had power to appoint the remainder in the fund.

Had Hans given Robert the remainder in fee, he would have enabled Robert to dispose of it inter vivos, contrary to the object of protecting Robert from his own improvidence. Hans prevented that from happening by giving Robert a power exercisable by will rather than the fee disposable inter vivos.

Hans' gift to Robert of a power, rather than a fee, was thus an integral part of his plan to keep the ownership of the property out of Robert's hands—subject only to the authority of the trustee to transfer any portion of the property to Robert "when in the best judgment of the trustee the said Robert Johnson is able and capable of managing his affairs . . . ."

II. Did Robert's will appoint the remainder which followed Robert's interest of a

life income? After directing payment of debts, Robert's will states:

> I give, devise and bequeath unto my brother, Dennis Elmer Johnson, all of the property, whether real, personal or mixed, or whatsoever character and wheresoever situate, of which I may die seized or possessed, in fee simple and with absolute power of disposition.

Robert's assets when he died were $7,911.57 of life insurance and $34.92 in a bank account.

An essential element of the exercise of a power is that the donee intend to exercise it. Restatement (Second) of Property § 17.1 (1986). An inquiry in a given case is thus whether the record shows the donee intended to exercise the power. This court stated in the case of *In re Proestler's Will*, 232 Iowa 640, 646, 5 N.W.2d 922, 925 (1942):

> Where a power of appointment is vested in one who has become deceased, it is usually held that the will of the decedent will constitute an exercise of the power in three classes of cases, to wit: (1) Where there is a reference to the power in the will; (2) where there is a reference to the property which is the subject on which it is to be executed; and (3) where the provisions of the will would otherwise be ineffectual. In the absence of any of these three requirements, it is usually held that the power of appointment does not constitute a part of the estate and therefore a general devise of "all the rest, residue and remainder" of the estate does not constitute an exercise of the power of appointment.

*See also* 62 Am.Jur.2d *Powers* § 49, at 147 (1972); 72 C.J.S. *Powers* § 40b, at 449 (1951).

Robert's will does not refer (1) to Robert's power under Hans' will or (2) to the trust fund established by Hans. The question therefore is whether, without the exercise of the power, (3) "the provisions of [Robert's] will would otherwise be ineffectual." The American Law Institute enlarges on this third indication of intent to exercise a power, in section 17.5 of the Restatement (Second) of Property: "The most common situation involving the rule of this section is where the dispositions under the donee's deed or will appear to be excessive if only the donee's owned property is considered but become understandable when the appointive assets are included." *Id.*, Comment *b*. Illustration 1 to this section applies the third indicator: A husband transfers $500,000 to a trustee to pay the income to the husband's wife for life, with a general power in the wife to appoint the remainder. The wife knew that she had assets of her own amounting to $80,000 and that she had the power of appointment over $500,000. In her will she made pecuniary gifts of $375,000 with the residue in trust for two sisters. The wife "has manifested an intent to exercise her general power to appoint by will." *Id.*

We have no comparable situation here. In his will Robert simply left all of his property to Dennis. This gift falls under the rule that "a general devise of 'all the rest residue and remainder' of the estate does not constitute an exercise of the power of appointment." *Proestler's Will*, at 645, 5 N.W.2d at 925. I thus agree with the court of appeals that Robert did not exercise the power.

III. To whom then does the trust fund go? Robert died without exercising the power and without having a wife or children. The court of appeals held that the fund goes as intestate property to Hans' heirs. I think it passed under paragraph 4 of Hans' will to Hans' children other than Minnie and Robert.

The general rule in the case of default in the exercise of a general power of appointment by will is that the property passes to the donor's (Hans') estate. It then passes from that estate, either as intestate property or under the donor's will if the will contains a clause which will carry the gift. Restatement, *supra*, § 24.1; 62 Am.Jur.2d *Powers* § 98, at 197 (1972) ("Ordinarily, where a power is unexercised ... the property subject thereto goes according to the disposition of the donor."); *see* 72 C.J.S. *Powers* § 55, at 465 (1951) ("The failure to

exercise a power ordinarily does not vest any estate in the donee or those entitled by descent from him."). If the donor's will contains a residuary gift, the property may pass under that clause. *Sigmon v. Moore's Administrator,* 297 Ky. 525, 180 S.W.2d 420 (1944).

A presumption exists against partial intestacy. 80 Am.Jur.2d *Wills* § 1175, at 287–88 (1975) ("Indeed, there is a strong presumption against intestacy as to any of the testator's property."); 95 C.J.S. *Wills* § 615a, at 828 (1957) ("a testator is presumed to have intended to dispose of his entire estate and to avoid intestacy in whole or in part"). Partial intestacy is avoidable here.

The initial paragraphs of Hans' will directed payment of debts, gave the widow a life estate, and made Carol Jean a monetary gift. Those clauses were carried out. Hans then gave the remainder of his property "except as hereafter stated" to his children absolutely. As "hereafter stated" in the will, one of the children, Minnie, did not take a regular child's share; she took $500 instead. She must therefore now be disregarded. Another of the children, Robert, did not take a regular child's share; he took instead a life income and power of appointment. He too must therefore now be disregarded. This leaves Hans' six other children to receive the trust fund, absolutely and in equal shares under paragraph 4 of the will. I would so hold.

REYNOLDSON, C.J., and LARSON, J., join this dissent.