# IN THE COURT OF APPEALS OF IOWA

No. 19-1881
Filed March 17, 2021

IN THE MATTER OF THE ESTATE OF HELEN L. BURGE, Deceased.

**KEITH BURGE,**
        Appellant/Cross-Appellee,

**ALEX BURGE and ELLIS BURGE,**
        Appellants,

**vs.**

**JOAN BURGE, LINDA FREESE, ERIN FREESE GRIGG, BRIAN FREESE, and GUTHRIE BURGE,**
        Appellees/Cross-Appellees,

**and**

**KEATON BURGE,**
        Cross-Appellant.

_____

        Appeal from the Iowa District Court for Linn County, Sean W. McPartland, Judge.

        The beneficiaries under a will appeal and cross-appeal from the court's order deciding objections to the executor's final report. **AFFIRMED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**

        Guy P. Booth, Cedar Rapids, and Darrel Morf and Chad Brakhahn of Simmons Perrine Albright & Ellwood, Cedar Rapids, for appellant Keith Burge.

Kevin C. Rigdon and Jase H. Jensen of Howes Law Firm, P.C., Cedar Rapids, for appellants Alex Burge and Ellis Burge.

Ann M. Klostermann McCrea and Crystal L. Usher of Nazette, Marner, Nathanson & Shea, LLP, Cedar Rapids, for appellees Linda Freese, Brian Freese, and Erin Freese Grigg.

Joseph W. Younker and Janice J. Kerkove of Bradley & Riley PC, Cedar Rapids, for appellee Joan Burge.

Keaton Burge, Mount Vernon, self-represented cross-appellant.

Guthrie Burge, Mount Vernon, self-represented appellee.

Heard by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

Following Helen Burge's death, her executor sought to probate her will, which left her estate to her children and grandchildren. Certain beneficiaries objected to the final report, and, after hearing, the probate court entered an order resolving those objections. Some of the beneficiaries appeal and cross-appeal from that order, arguing the court had no authority or jurisdiction to resolve certain disputes and the court erred in distributing particular assets. We reject these challenges and affirm.

## I. Background Facts and Proceedings.

Helen[1] died on January 9, 2015. Because Helen's husband predeceased her, her will left her estate to her descendants: her three children—Keith Burge, David Burge, and Linda Freese; Keith's four children—Alex Burge, Ellis Burge, Guthrie Burge, and Keaton Burge; and Linda's two children—Erin Freese and Brian Freese.[2] Keith and David, as executors of Helen's estate, filed a petition for probate of Helen's will. David later died on April 15, 2017. Thereafter, David's surviving wife, Joan, participated in these proceedings as the executor and sole beneficiary of David's estate.

Helen's will first distributed $30,000.00 to David "if [David] is surviving on the death of the survivor" of Helen and her husband. The will then directed distribution of the remaining residue to Helen's descendants, with half of the

---

[1] Because Helen and most beneficiaries share the last name Burge, we will refer to these persons by first and last name on first reference and by first name only on subsequent references.

[2] As used throughout this opinion, "the children" refers to Keith, David, and Linda; "the Farming Grandchildren" refers to Alex, Ellis, Guthrie, and Keaton; and "the Freese beneficiaries" refers to Linda, Erin, and Brian.

residue left to the three children in equal shares, and the other half of the residue left to the six grandchildren in equal shares, with some additional provisions.

Relevant to these proceedings, Helen's will contained two provisions to accomplish her stated wish of ensuring her farmland would continue to be owned "by those members of my family who are engaged in farming." First, the will granted the Farming Grandchildren an option to purchase the entirety of Helen's farmland. If the Farming Grandchildren exercised this option, the will directed the Farming Grandchildren to pay a penalty if they sold the farmland within fifteen years. Any such penalty would be "distributed in equal shares to [the] children per stirpes."[3] This option expired three years after Helen's death. Second, Keith could, "in lieu of his receiving his share of [the] estate in the same fashion as [the two] other children, . . . elect to take his share in the form of farmland, provided he and [the] Farming Grandchildren can agree upon an appropriate farm division which would facilitate such transfer."

The Farming Grandchildren provided timely written notice of their intent to exercise their option to purchase the farmland. Keith provided timely written notice of his intent to receive farmland as his distributive share. On February 7, 2018, Keith, acting as sole executor of Helen's estate after David's death, filed a final report. This filing included a copy of a real estate installment contract (the first proposed contract) signed[4] January 8, 2018, which sought to effectuate the

---

[3] The penalty would be the amount by which the sale price exceeded the Farming Grandchildren's purchase price. In other words, any profit on the sale of the farmland within the fifteen-year period after the Farming Grandchildren's purchase would go to the children, not to the Farming Grandchildren or anyone else.

[4] The signatories to the contract are Keith as executor and the four Farming Grandchildren.

Farming Grandchildren's purchase[5] of Helen's farmland and the transfer of part of that farmland to Keith.

Joan filed an objection—and the Freese beneficiaries filed a separate objection—asserting numerous issues with the final report and with Keith's actions as executor. The probate court set a hearing on the objections, but on Keith's motion the court continued the hearing so the parties could engage in settlement discussions. A little over one month later, Joan filed a motion—which the Freese beneficiaries later joined—seeking to enforce a settlement agreement the parties purportedly reached. Alex and Ellis resisted Joan's motion, and the settlement-enforcement issue proceeded to a hearing. Following the hearing, the court issued an order finding, although the beneficiaries who participated in the settlement negotiations reached a settlement, the settlement was not enforceable because Guthrie and Keaton did not participate in negotiations or agree to the terms.

On December 12, 2018, Keith filed an amended final report, which included a proposed amended contract (the second proposed contract) to effectuate the transfer of Helen's farmland to Keith and the Farming Grandchildren. All outstanding issues proceeded to a hearing on January 9, 2019. After a period allowed for post-hearing briefing, the probate court entered the order at issue here. The court's order addressed all remaining issues, including memorializing Keith's interest and the Farming Grandchildren's interest in the farmland, declaring the required terms of any contract for the sale of the farmland to effectuate the options

---

[5] The Farming Grandchildren formed a limited liability company to own and operate the farmland, as permitted under the will. For simplicity, we will refer to the Farming Grandchildren as the purchaser of the farmland.

exercised by Keith and the Farming Grandchildren, and denying a request by Alex and Ellis for attorney fees. The court's order included direction that, if Keith continued with the exercise of his option to take farmland, it would be in lieu of his receiving his share of the estate such that he would not be entitled to a share of any penalty associated with the Farming Grandchildren's future sale of the farmland.

Alex and Ellis appeal, arguing the probate court improperly modified the first proposed contract, interfered with their inheritance of the residue, and should have awarded attorney fees. Keith also appeals, arguing the court should not have removed him as a residual beneficiary. Keaton filed a cross-appeal, arguing the court should have excluded Joan as a beneficiary and from participating in the proceeding.[6] Joan filed a brief as appellee/cross-appellee, which the Freese beneficiaries joined.

## II.  Standard of Review.

We review objections to an executor's final report de novo. *In re Estate of Johnson*, 387 N.W.2d 329, 332 (Iowa 1986); *see also* Iowa Code § 633.33 (2015) (stating all matters in probate, other than actions to set aside or contest wills, are tried in equity); Iowa R. App. P. 6.907 ("Review in equity cases shall be de novo."). "Although we give deference to the district court's findings of fact, we are not bound by them." *Johnson*, 387 N.W.2d at 332.

---

[6] Keaton's self-represented cross-appeal raises numerous other issues that are either duplicative of the issues raised on appeal or not properly before us. To the extent he raises issues the other beneficiaries raised on appeal, we consider his arguments with the appropriate issue on appeal. We do not consider arguments not properly raised.

In Iowa, the cardinal rule of will construction is that "the intent of the testator is the polestar and must prevail." In determining the testator's intent, we consider "(a) all of the language contained within the four corners of the will, (b) the scheme of distribution, (c) the surrounding circumstances at the time of the will's execution[,] and (d) the existing facts." The court considers the instrument as a whole and tries to give each part meaning and effect.

*Roll v. Newhall*, 888 N.W.2d 422, 426 (Iowa 2016) (alteration in original) (quoting *In re Estate of Rogers*, 473 N.W.2d 36, 39 (Iowa 1991)).

### III.    Terms of the Real Estate Contract.

Alex and Ellis—two of the Farming Grandchildren—attack the probate court's order requiring the contract to sell the farmland to include terms different from those in the first proposed contract on multiple grounds. Before addressing these contentions, it is important to recognize what the court's order did and did not do. The court ordered any contract for the sale of the farmland to include two provisions that differed from the terms of the second proposed contract. The provisions (1) barred Keith from sharing in profits from sale of the farmland during the contract term, as discussed in section VI below, and (2) barred the contract sellers from participating in the Farming Grandchildren's operation and maintenance of the farm during the contract term. Otherwise, the court approved the second proposed contract in full. Alex and Ellis appear to seek reinstatement of the terms of the first proposed contract filed with the February 7, 2018 final report. However, any differences between the first proposed contract and the second proposed contract were the result of settlement negotiations between the beneficiaries, not the result of a court order. Thus, we have nothing to review to the extent Alex and Ellis object to differences between the first proposed contract and the second proposed contract. We can properly review Alex and Ellis's

objection to the contract terms imposed by the district court based on the court's interpretation of the will.

### A. Authority to Order Terms of the Contract.

Alex and Ellis argue Keith, as executor, "has the sole right, without court oversight, to sell real estate because the [w]ill provides an unrestricted power of sale." They note the will authorizes the executor "[t]o sell, convey, auction, lease or mortgage any property . . . upon such terms and conditions as shall seem best to" the executor.

The will, when read as a whole, specifically does not give the executor unchecked power to dispose of the farmland. In granting the Farming Grandchildren an option to purchase the farmland, Helen established numerous terms and conditions on the sale in her will, including price per acre and limits on the purchasers' ability to resell the farmland. Helen directed the executor to "establish reasonable terms and conditions" to implement the sale, and she explicitly authorized the courts to resolve "any dispute as to the reasonableness of any such terms or conditions." Nothing in the will limits who can dispute the terms or conditions of the proposed sale contract. As parties entitled to receive sale proceeds from the sale and entitled to receive funds in the event the farmland was sold for a profit within the fifteen-year period following the Farming Grandchildren's purchase, Joan and the Freese beneficiaries certainly had an interest in the terms of the contract and the right to dispute terms they viewed as unreasonable. Thus, the court ordering the terms and conditions that must be included in any contract of sale to resolve any objections to "reasonableness" is authorized by the will.

*B. Jurisdiction Over the Contract.*

Alex and Ellis argue the first proposed contract was enforceable. They assert the probate court's involvement in setting the terms of the contract constituted a modification of the first proposed contract and the court lacked jurisdiction to do so. In making their argument, they appear to conflate jurisdiction with authority. *See Alliant Energy-Interstate Power & Light Co. v. Duckett*, 732 N.W.2d 869, 874–75 (Iowa 2007) ("Subject matter jurisdiction refers to the authority of a court to hear and determine cases of the *general class* to which the proceedings in question belong, not merely the particular case then occupying the court's attention. A court may have subject matter jurisdiction but for one reason or another may not be able to entertain a particular case. In such a situation we say the court lacks authority to hear that particular case." (citations omitted)).

To the extent Alex and Ellis question the court's jurisdiction, the Iowa Code explicitly authorizes the court to hear probate matters and construction of wills. *See* Iowa Code § 633.10(1)–(2). The probate court also "has plenary jurisdiction to determine matters essential to probate business before it." *In re Guardianship of Matejski*, 419 N.W.2d 576, 578 (Iowa 1988).

To the extent Alex and Ellis question the court's authority, they claim the court's actions should be limited to resolving disputes in the executor's final report, not to the terms of the first proposed contract. However, the objections to the final report specifically extended to any terms of a contract to effectuate the options exercised by the Farming Grandchildren and Keith. Given the court's broad jurisdiction to hear probate matters and the nature of the objections, the district court had the authority to establish the terms of any contract effectuating the

options.  *See In re Estate of Ballstadt*, No. 03-2117, 2004 WL 1899949, at *2 (Iowa Ct. App. Aug. 26, 2004) ("Certainly, a district court sitting in probate has jurisdiction to approve sales of real estate, so one must conclude the court had the power to hear and determine a case of this general class.").

### *C. Modification of the First Proposed Contract.*

Finally, Alex and Ellis assert there is no authority and there are no facts to justify what they claim was a modification of the first proposed contract.  Their central argument here appears to be that the first proposed contract was a binding contract that the probate court was bound to accept without modification.  In support of this contention, they cite *Estate of Randeris v. Randeris*, arguing it stands for the proposition that the probate court's authority in ruling on objections to a final report are limited to resolving questions surrounding the executor's accounting and "does not invoke the court's general jurisdiction to actually adjudicate title."  523 N.W.2d 600, 604 (Iowa Ct. App. 1994).

We find *Randeris* inapplicable.  *Randeris* involved a challenge to the executor's failure to attempt to set aside transfers of land completed prior to the testator's death.  *Id.* at 603.  In this context, the court noted the probate court's authority in ruling on an objection to a final report did not extend to actually adjudicating title to the previously conveyed land.  *Id.* at 604.  As a result, the court concluded the probate court improperly set aside the predeath transfers of property.  *Id.*

Here, unlike in *Randeris*, we are not dealing with predeath transfers or actions by Helen prior to her death.  Instead, we are dealing with the actions of the executor in fulfilling his obligations under the terms of Helen's will, which included

effectuating the sale of farmland to the Farming Grandchildren pursuant to the exercised option, but only under the terms and conditions set in the will. As explained above, the executor's power to sell the farmland was subject to the terms and conditions in the will and court review for reasonableness. The probate court was within its authority to rule on objections to the manner in which the executor was effectuating the sale of the farmland by making sure any contract correctly included required terms. Furthermore, the attorney for Alex and Ellis conceded at the January 9, 2019 hearing that the first proposed contract could not simply be ratified because it did not provide for Keith's share of the farmland. For these reasons, we agree the first proposed contract was not binding or enforceable and the probate court's establishment of required terms of the contract for sale was not a modification of an existing contract.

### IV.    Lien on the Farmland.

The second proposed contract contains the following provision: "Sellers and it [sic] successors and assigns shall have a lien against the Farming Grandchildren's Land for purposes of enforcing all rights under this contract, including, but not limited to, rights of forfeiture or foreclosure." The probate court's order approved of a lien and directed the executor "to recognize, memorialize and record a lien or liens on . . . the farmland until the contract is paid in full." Alex and Ellis argue the court should not have ordered the lien, characterizing the lien as "divest[ing] the Farming Grandchildren of their interests in the residuary." However, the lien does not affect each Farming Grandchild's one-twelfth interest in the residuary. The lien only affects the Farming Grandchildren's option to purchase the farmland, which the will subjects to "reasonable terms and

conditions." The Farming Grandchildren are free to decline the option if they disagree with the terms and conditions of the sale. Because the lien will protect the sellers in the event of forfeiture or foreclosure of the farmland, we agree the lien is a reasonable condition of the contract as ordered by the probate court.

## V.    Attorney Fees.

Alex and Ellis appeal the district court's denial of their request for attorney fees.[7] "Generally, a party has no claim for attorney fees as damages in the absence of a statutory or written contractual provision allowing such an award." *Williams v. Van Sickel*, 659 N.W.2d 572, 579 (Iowa 2003). Alex and Ellis do not seek an award of attorney fees under statute or contract. Instead, they seek an award of attorney fees under the common law. We review a common law request for attorney fees de novo. *Id.*

"To obtain common law attorney fees, a party must prove 'that the culpability of the [opposing party's] conduct exceeds the willful and wanton disregard for the rights of another' standard required to prove punitive damages." *Id.* (quoting *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.*, 510 N.W.2d 153, 159 (Iowa 1993)). "The opposing party's conduct 'must rise to the level of oppression or connivance to harass or injure another.'" *Id.* (quoting *Hockenberg*, 510 N.W.2d at 159–60). In requesting attorney fees, Alex and Ellis repeat their

---

[7] In addition to their common law claim for attorney fees, Alex and Ellis requested attorney fees under Iowa Rule of Civil Procedure 1.413. This "rule is intended to discourage parties and counsel from filing frivolous suits and otherwise deter misuse of pleadings, motions, or other papers." *Barnhill v. Iowa Dist. Ct.*, 765 N.W.2d 267, 273 (Iowa 2009). For the same reasons expressed in this section, we find the probate court did not abuse its discretion in denying the request for sanctions under rule 1.413. *See id.* at 272 (reviewing a request for sanctions for abuse of discretion).

arguments on the issues from above and other issues before the probate court, and they assert the objectors acted contrary to authority. The court found the parties "have engaged in some conduct, and taken some positions, which may easily be characterized as beyond zealous advocacy for positions based upon facts and principles at law." However, the court concluded the objectors' actions did "not rise to the level of culpability exceeding the willful and wanton disregard of other parties." As noted above, we reject all of Alex and Ellis's arguments on appeal. On our de novo review of the record, we agree with the probate court that the objectors' conduct does not rise to the level justifying a common law award of attorney fees.

### VI. Keith's Interest.

To effectuate the will's penalty for early sale of the farmland, if such a future sale were to occur, the second proposed contract required the Farming Grandchildren to pay an amount in equal shares to Keith, Linda, and Joan (as David's successor) for each acre sold. Because Keith elected to take his share of the estate as farmland, the probate court ordered Keith removed from this provision so any penalty would be paid in equal shares to Linda and Joan only. Keith argues this modification is contrary to the intent of the will.

Keith correctly notes the will requires the penalty "be distributed in equal shares to [the] children per stirpes." However, the will also mandates that Keith's election to receive farmland is "in lieu of his receiving his share of [the] estate in the same fashion as [the] other children." Thus, by electing to receive his share of the estate in farmland, Keith forfeited his right to further inherit under the will "in the same fashion as [the] other children." This includes forfeiting his right to

receive any penalty for early sale of the farmland. We agree with the probate court that excluding Keith from any penalty for early sale of the farmland is a correct interpretation of the will.

### VII. David's Interest.

Helen died on January 9, 2015. Thereafter, David died on April 15, 2017. Keaton argues David's death bars Joan and David's estate from inheriting under the will. He bases this argument on the following provision in the will:

> The remainder of the residue shall be distributed as follows:
>
> . . .
>
> One-half thereof to be distributed in equal shares to my three children, Keith Burge, David Burge and Linda Freese. If any of my children shall not be *then surviving* such child's share shall be distributed to such child's descendants per stirpes, or if none are then surviving, then added to shares of any other children as aforesaid. Such bequests shall be subject to the option provisions of Division B hereof.

(Emphasis added.) Keaton argues "then surviving" refers to the date the Farming Grandchildren exercised their option to purchase the farmland or the date the option expired, whichever occurred first. Keaton asserts the will shows a clear intent for Helen's estate to remain with her children and grandchildren. However, there is nothing in the terms of the will that supports Keaton's contention. In fact, the will shows Helen intended to identify the beneficiaries at the time of her death. The bequest of $30,000.00 to David specifically occurs "if [David] is surviving on the death of the survivor" of Helen and her spouse (who predeceased Helen). Helen's will does not contain any alternate bequests if a beneficiary dies after the testator. *See, e.g.*, Marlin M. Volz, Jr., Iowa Practice Series: Methods of Practice § 20:18 (Aug. 2020 update) (providing an example of a bequest if the beneficiary

"dies within 60 days after" the testator). Due to the fact David survived Helen, we agree David is a full beneficiary under Helen's will, and Joan, as the sole beneficiary of David's estate, is entitled to receive David's share of the inheritance.

**VIII. Conclusion.**

The probate court properly directed the required terms of the contract for the Farming Grandchildren to purchase the farmland, including placing a lien on the farmland until final payment. Additionally, Alex and Ellis are not entitled to attorney fees, Keith is properly excluded from receiving any penalty payment from early sale of the farmland, and Joan, as sole beneficiary of David's estate, is entitled to receive David's inheritance under the will.

**AFFIRMED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**